## Case No. 10,311.

### NORTH et al. v. KERSHAW et al.

[4 Blatchf. 70.] [1]

Circuit Court, S. D. New York. July 1, 1857.

PATENTS—PRELIMINARY INJUNCTION — LICENSE — LEGAL OWNER A PARTY TO INFRINGEMENT SUIT—LACHES—ACQUIESCENCE.

1. Where a patent has not been judicially established, or acquiesced in by the public, a preliminary injunction will not be issued on it, unless the plaintiff's right is free from doubt, and the violation of right by the defendant is equally clear.

[Cited in New York Grape-Sugar Co. v. American Grape-Sugar Co., 10 Fed. 837; Dickerson v. De La Vergne Refrigerating Mach. Co., 35 Fed. 144.]

2. Where the legal owner of a patent granted a license to use it, and covenanted not to license any one else, and not to use the patent himself, and the license provided that such owner should have one-half of the damages to be recovered for the violation of the patent: Held, that the legal owner was a necessary party to a suit for an infringement of the patent.

[Cited in Huber v. Myers Sanitary Depot, 34 Fed. 753.]

3. Where, on a motion for a preliminary injunction on a patent, the evidence as to the originality of the invention is such as to show that there would be, at least, as much probability of doing irreparable mischief as of preventing it, by granting the injunction, the motion will be denied.

[Cited in Southwestern Brush Electric Light & Power Co. v. Louisiana Electric Light Co., 45 Fed. 896.]

4. Where the defendant claims to have done the acts complained of under the authority of a patent, and with the knowledge of the plaintiff, and unmolested for a length of time, and to have, in consequence, invested money in the business sought to be stopped, a preliminary injunction will not be granted except in a case free from all reasonable doubt.

In equity. This was an application for a provisional injunction. The bill claimed that the defendants [James Kershaw and others] were violating two letters patent belonging to the plaintiffs [O. B. North & Co.], for improvements in the manufacture of harness-saddles. One of the patents was originally issued to John T. Denniston, on the 20th of November, 1846. [No. 4,860.] Denniston, on the 22d of January, 1847, sold one-third of that patent to Aaron Remsen, and one-third of it to Aaron D. Polhamus. Denniston, Remsen and Polhamus, on the 14th of June, 1856, granted a license under it to the plaintiffs and covenanted that they would not license any one else. On the 9th of September, 1856, the patent was reissued. The other patent was originally granted to A. H. Gazley, March 14th, 1848. [No. 5,476.] Gazley died before September, 1850, and Charlotte Gazley was appointed his administratrix.

She, in September, 1850, assigned the title to the patent to Nathaniel Wright; and he, in June, 1855, sold it to the plaintiffs. In October, 1856, the plaintiffs took out a reissued patent in their own names.

Edwin W. Stoughton and Samuel Blatchford, for plaintiffs.

George Gifford, for defendants.

INGERSOLL, District Judge. Neither of the patents sued on in this case has been established on a trial, either at law or in equity. Nor have the exclusive rights which they purport to grant been acquiesced in by the public. Under these circumstances, to authorize the issuing of a preliminary injunction, the right of the plaintiffs must be clear and free from doubt, and the violation of right on the part of the defendants must be equally clear.

As it respects the Gazley patent, it is clear that, whatever rights were granted by the reissued one, are exclusively in the plaintiffs; that no one but the plaintiffs has any portion of either the legal or the equitable rights so granted; and that, to maintain the rights so granted, it is not necessary that there should be any other plaintiffs. With respect to the Denniston patent, it is not clear that the proper parties plaintiffs are before the court, to maintain a suit on that. The legal title to the Denniston patent is in Denniston, Remsen and Polhamus. The plaintiffs have no legal right to that patent. They have only a license to use it, and a covenant on the part of Denniston, Remsen and Polhamus, not to license any one else, and not to use the patent themselves. By the terms of the license, one-half of the damages to be recovered for the violation of the Denniston patent, is to belong to Denniston, Remsen and Polhamus. They, therefore, have an immediate and direct interest in any suit brought on the Denniston patent, and are not only proper parties but necessary parties, in any suit brought for an infringement of the Denniston patent.

The originality of the improvements which these two patents purport to secure to the patentees, is not so clearly established as to authorize the injunction prayed for. After examining the proofs exhibited on the motion, it appears that there would be, at least, as much probability of doing irreparable mischief as of preventing it, by granting the injunction. To succeed, on a motion of this kind, the plaintiffs should make a stronger case.

There is one view of the case, as presented on the part of the defendants, which should incline a court to refuse a preliminary injunction, unless the right on the part of the plaintiffs, and the violation of right on the part of the defendants, are made clear and manifest. The defendants claim that they have a right to make the harness-saddles which they are manufacturing, under and

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

by virtue of a patent issued to Robert Spencer, in August, 1850. As soon as the Spencer patent was obtained, Spencer and the defendant McMonnies commenced the manufacture of harness-saddles in the way they are now making them. McMonnies was interested, at first, to the extent of one-fourth, in the Spencer patent. Subsequently, he purchased another fourth; and, about four years ago, finding that the improvement was useful, and that no one had molested them in the manufacture, he bought out Spencer's entire interest   Since the purchase of the entire interest, he has continued to manufacture saddles in the mode in which he now manufactures them, with the knowledge of the proprietors of the Denniston and Gazley patents, and without any suit or molestation by them. McMonnies advanced his money to manufacture saddles in the way in which he is now manufacturing them, in the confidence that the proprietors of the Denniston and Gazley patents would have no right to molest him in such manufacture. They, by their non-interference, signified, either intentionally or unintentionally, that he had at least some reason to indulge in such confidence. Under these circumstances, no preliminary injunction should be granted, except in a case free from all reasonable doubt. Such a case has not been made out by the plaintiffs. The motion, must, therefore, be denied.