DICKERSON *et al. v.* DE LA VERGNE REFRIGERATING MACHINE Co. *et al.*

*(Circuit Court, S. D. New York.* March 5, 1888.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—INJUNCTION—WHEN GRANTED.
    In an application for a preliminary injunction to restrain the manufacture of machines alleged to infringe letters patent, when the defendants admit the validity of the patent, if construed, as they insist, but insist that they do not infringe; and say that if the patent be construed as plaintiffs insist, they admit that machines infringe, but deny the validity of the patent, for want of novelty,—the complainant is not entitled to an injunction until he shows a former adjudication in favor of his letters patent, or an equivalent.
2. SAME—FORMER ADJUDICATION—INTERFERENCE PROCEEDINGS.
    The letters patent under which the complainants seek to enjoin defendants were issued July 22, 1884, to one Suckert, for refrigerating machines. After the grant of this patent, one Block filed an application for improvements in refrigerating machines. and in an interference which was declared and contested in the patent-office, the defendants in this proceeding were the real parties, paying all the expenses of the interference. In that proceeding Block filed a motion to dissolve the interference, attacking Suckert's patents on several grounds, but the motion was dismissed because of (1) laches in filing it; and (2) the insufficiency of the grounds; and the contest was decided in favor of Suckert. *Held,* that the only question raised by the interference was as to which was the prior inventor, and this decision was not equivalent to an adjudication in favor of the patent, and would not justify a preliminary injunction in an action where the patent was assailed for want of novelty.

In Equity. On bill for preliminary injunction.

This is an application made by Edward N. Dickerson, Jr., trustee, and others, to restrain the De la Vergne Refrigerating Machine Company from manufacturing refrigerating machines alleged to be an infringement of letters patent No. 302,294, granted July 22, 1884, to Julius J. Suckert, under whom the complainants claim.

*Dickerson & Dickerson,* for complainants.

*Banning & Banning, (George Harding, Edmund Wetmore,* and *William A. Jenner,* of counsel,) for defendant De la Vergne Refrigerating Machine Company.

*A. P. Fitch,* for defendant Ehret.

LACOMBE, J. This is an application for a preliminary injunction to restrain the manufacture and sale of refrigerating machines, which it is contended infringe several of the claims under letters patent No. 302,-294, granted July 22, 1884, to Julius J. Suckert, and which have passed by mesne conveyances to the plaintiffs. The defendants qualifiedly dispute the validity of the patent, and qualifiedly deny infringement. In

other words, if the patent is construed as they insist it should be, they admit its validity, but assert that they do not infringe; if, however, it be construed as plaintiffs insist it should be, then defendants admit that their machines infringe, but assert that the patent is void for want of novelty.

The argument on the physics of the case has been adjourned till after examination of the other questions, but it has been sufficiently developed to show that on this branch of the case there arises a conflict susceptible of elaborate and extended discussion, and not determinable without careful deliberation. By this defense the validity of complainants' patent is questioned with sufficient directness to require them to establish to the satisfaction of the court that there is such a presumption in favor of its validity as will, under the decisions, warrant the issuing of a preliminary injunction.

Patents are granted after examination by, and under the allowance of, officials whose business it is to critically examine the applications therefor in connection with outstanding patents and the state of the art. The letters patent which evidence the favorable decision of these officials in that regard are *prima facie* valid. The experience of the courts, however, with these patent-office decisions seems not to have been altogether happy, and we find them repeatedly declining to concede that a presumption of validity arises from the unattended letters patent. "Under the uniform ruling of the courts of the United States for more than half a century, if there has been no decision on the patent by a United States court, on the merits, the party is driven to show that his patent went into use, undisputed, for a sufficient time to raise a *prima facie* case in his favor." *Manufacturing Co.* v. *White,* 1 Fed. Rep. 604. And see *White* v. *Manufacturing Co.,* 3 Fed. Rep. 161; *Manufacturing Co.* v. *Charles Parker Co.,* 17 Fed. Rep. 240; *De Ver Warner* v. *Bassett,* 7 Fed. Rep. 468; *Potter* v. *Muller,* 2 Fish. Pat. Cas. 465; *Tappan* v. *Bank-Note Co.,* Id. 195; *Machine Co.* v. *Williams,* Id. 135; *North* v. *Kershaw,* 4 Blatchf. 70. Careful search has not disclosed any decision of this circuit repudiating this rule as the guide to be followed upon motions for preliminary injunctions, although in other circuits it is not always adhered to. *Manufacturing Co.* v. *Deering,* 20 Fed. Rep. 795; *Foster* v. *Crossin,* 23 Fed. Rep. 400. In the last-cited case Judge CARPENTER refers to two authorities in this circuit as in accord with his decision, but, upon examination, they will be found not inconsistent with rule above quoted. Thus, in *Lantern Co.* v. *Miller,* 8 Fed. Rep. 315, Judge SHIPMAN, it is true, granted a preliminary injunction. He held, however, that the plaintiffs must, upon such a motion, establish the infringement beyond reasonable doubt, and that, as such question often depends upon the proper construction of the patent, its claims should ordinarily have been construed by a court of competent jurisdiction, or should have been practically construed by the consent and acquiescence of that part of the public which is cognizant of the extent of the monopoly. Such construction he found in the case before him in a decision on part of the claims, and in the fact that in another suit an elaborate argument in support of the

patent so impressed the judge who heard it that he required defendants to file a bond as the condition of refusing the injunction, that suit being subsequently settled by the payment of $210,000. "I am satisfied," says Judge SHIPMAN, "that by virtue of all the recited decisions and the circumstances of this case, the question has been so far settled that I ought not to refuse an injunction upon the ground of non-adjudication." So, too, in *Sugar Co.* v. *Sugar Co.*, 10 Fed. Rep. 835, Judge WALLACE speaks of the rule that a preliminary injunction would not be granted unless the right secured by the patent was fortified by evidence of an exclusive or recognized enjoyment, or by former adjudications, as "relaxed in more recent practice." Such relaxation, however, he finds only when the validity of the patent is not assailed, and the proof of infringement clear.

In the case at bar it cannot be said either that the validity of the patent is not assailed or that proof of infringement is clear, and there has not been a sufficiently long-continued, recognized, and exclusive enjoyment. Inasmuch, therefore, as the wholesome and salutary rule which has for half a century been followed in deciding applications for preliminary injunction in patent cases stands unqualified by reported decisions in this circuit, it will be accepted as controlling of this motion. To sustain their claim plaintiffs must therefore show an adjudication in their favor, or its equivalent. There is no such adjudication, but the plaintiffs contend that its equivalent is found in an interference decision, to which defendants were parties or privies. The letters patent in suit were issued to Suckert, July 22, 1884, upon an application filed December 3, 1883. Subsequently one Louis Block filed an application for a patent for improvements in refrigerating machines, and an interference was declared and contested in the patent-office between himself and Suckert. Block was in the employ of the De la Vergne Company, which paid the expenses of the interference, and was in fact the contesting party. The complainants claim that under these circumstances "every question contested and necessary to be contested in that interference is, at least so far as a preliminary injunction is concerned, *res adjudicata inter partes.*" The question raised by the interference was whether Suckert or Block was the prior inventor. That question was decided in favor of Suckert, and Block's application for a patent refused. Before the case came on for final hearing, Block moved for the suspension and dissolution of the interference, upon several grounds. The commissioner held that "the motion could not be sustained—*First*, because there was not sufficient showing why the motion had not been filed earlier, as contemplated by the rules; and, *second*, because the grounds are not such as would justify the approval of the motion." Because by this motion Block sought to question the validity of Suckert's invention, it is now claimed that defendants are estopped from denying such validity on this motion upon any defenses advanced, or within their knowledge at the time the patent-office decided in Suckert's favor.

It is not understood that the defendants dispute the entire validity of plaintiffs' patent. On the contrary, they admit its validity if it be con-

strued according to their theory, and contend that only if it be given the construction plaintiffs put upon it, is it void for want of novelty. Therefore they insist that there is nothing in their present position at variance with the decision in the interference case. Whether this be so or not need not now be considered, unless it appears that there has been a decision in the interference case such as the court will accept as equivalent to an adjudication in support of the patent. As stated above, the courts long ago reached the conclusion that the decisions of the patent-office (being in most cases official opinions formed without the illumination derived from the vigorous encounter of private interests)·were ordinarily unsatisfactory foundations upon which to base preliminary injunctions. There are cases, however, in which an application for a patent being in interference with some pending application or unexpired patent, a determination of the question of priority of invention is required by statute, (Rev. St. § 4904,) and is made after an examination, in which the contesting parties have abundant opportunity to offer proof, and argue in support of their respective claims; and where, before final action, either party has (under the rules) the opportunity to lay before the commissioner any evidence he may have touching the novelty and patentability of the invention. In some of these cases the courts have within the past 10 years accepted the official decision of the patent-office as sufficient to sustain the presumption of validity, which is essential to the granting of an injunction. The decisions which the statutes contemplate are determinations of the commissioner as to priority of invention, (section 4904,) as to novelty, utility, and patentability, (section 4893,) and are evidenced by the action he takes. Thus, if the interference is between two applicants, his issuing of the patent to one determines all these points in his favor and against the other. If the interference is between a patentee and an applicant, a decision in favor of the applicant determines all these points in his favor; but a decision against the applicant does not necessarily determine all these points the other way. Thus, although satisfied that the applicant was in reality the prior inventor, the commissioner may refuse to issue the patent to him, because since the first patent was issued the patent-office may have become convinced that the subject-matter was not patentable or novel. The statute, which has given him no power to recall an issued patent, has provided for no official action by which he can pronounce it valid or invalid, except that by granting a patent for the same invention to an interfering applicant he decides the invention to be meritorious, but the first patentee not entitled to it.

In the case at bar the patent to Suckert was issued before Block's application, and the decision rendered under section 4904 declared that, as between them, Suckert was the prior inventor. Whatever may have been the opinion of the patent-office after the interference as to the patentability and novelty of the invention, the statute has not provided for its official utterance. As to the Block invention, it having been determined that he had taken it from Suckert, his application was to be denied on that ground. As to the Suckert patent the commissioner was *functus officii*.

A careful examination of the reported cases which have accepted interference decisions as sufficient to sustain preliminary injunctions fails to show a single one in which the determination accepted in support of the patent was one which was not evidenced by the performance of some official act required by the statute: (1) In *Pentlarge* v. *Beeston*, (1877,) 14 Blatchf. 352, neither the novelty or patentability of the invention was assailed. (2) In *Greenwood* v. *Bracher*, (1880,) 1 Fed. Rep. 856, the defendant had a patent in 1878. Bigelow (plaintiff's assignor) applied January, 1879. Interference was declared, and patent subsequently issued to Bigelow. (3) *Peck* v. *Lindsay*, (1880,) 2 Fed. Rep. 688. The report of this case is not very full, but the granting of reissued letters to complainant's assignor seems to have been after interference with defendant's assignor. (4) *Holliday* v. *Pickhardt*, (1882,) 12 Fed. Rep. 147. The extremely meager report of this case affords little opportunity for analysis. Whether the validity of plaintiff's patent was attacked does not appear. Patents were apparently issued both to himself and Caro, (defendant's assignor;) and, as it is stated that upon interference the question of priority of invention was decided in favor of Holliday, his patent was apparently granted after interference. (5) *Smith* v. *Halkyard*, (1883,) 16 Fed. Rep. 414. Here interference was declared between two applicants, one of whom raised the point that there had been a prior public use of the machine for two years. The subsequent issuance of the patent was an official determination of that question. (6) *Shuter* v. *Davis*, (1883,) 16 Fed. Rep. 564. Application for final decree, and therefore hardly applicable. Upon interference between the patentee and defendants, the question of priority was determined in his favor. The defense of want of novelty was held by the court to be undoubtedly open to the defendants. (7) *Swift* v. *Jenks*, (1884,) 19 Fed. Rep. 641. A patent was first issued to defendant. Subsequently, after interference, and evidence introduced by defendant tending to show want of novelty, a patent was issued to complainant. (8) *Manufacturing Co.* v. *Collar & Cuff Co.*, (1885,) 24 Fed. Rep. 275. In this case interference was between rival claimants before the issue of any patent. (9) *Hubel* v. *Tucker*, (1885,) 24 Fed. Rep. 701, deals only with a proceeding under section 4918, between interfering patents. (10) *Machine Co.* v. *Stevenson*, (1882,) 11 Fed. Rep. 155. A meager report, but, as both parties held patents, and it appeared that there had been an interference, the later one must have been issued after interference. (11) *Edward Barr Co.* v. *Sprinker Co.*, (1887,) 32 Fed. Rep. 79. The only question determined in this case was as to what constituted privity. The patent sued on was issued after interference.

An examination of these decisions shows that the courts have heretofore been cautious in accepting the decisions of the patent-office in interferences. Their effect is strictly confined to parties and privies. No case is found in which a preliminary injunction has been granted on the patent-office decision of a question raised in interference, where that decision was not deducible as a necessary implication from statutory action, and there is no good reason for further modifying the wholesome and

well-settled rule which requires an adjudication in court, or public acquiescence, as a necessary prerequisite to granting the relief here prayed for. The force of an interference decision is also sometimes supplied by the doctrine of estoppel; the party who has received a patent, or who has asked for one, being estopped from subsequently claiming that the subject-matter thereof was not patentable. In the case at bar, however, the defendant's claim is that the patent is void only when it is given the construction which the plaintiffs contend for. There is not in this anything necessarily inconsistent with an application for a patent to be construed on defendant's theory.

The motion for preliminary injunction should be denied.

## ON MOTION FOR REHEARING.

### (May 23, 1888.)

LACOMBE, J. The precise point raised on this motion for reargument is thus stated by complainants:

"The question under discussion is whether this decision of the court is correct, namely, that when, in an interference proceeding between a granted patent and an applicant, a patent is granted to the applicant, then the patentability of the subject-matter is so established by the decision that on a motion for preliminary injunction the original patentee cannot be permitted to controvert it by anything known to him during the interference; but that when, under those circumstances, the patent is refused to the applicant, he is permitted to set up, on a motion for preliminary injunction, that the subject-matter for which he applied for a patent is not patentable by reason of facts known to him when he was asserting patentability on the interference. This proposition is affirmed in the decision, and is founded upon the supposition that in the latter case the patentability of the subject-matter was not 'necessarily' decided in the patent-office, and in the former case it was. There is no other reason given for discriminating the two cases, and if that reason is not well-founded, then the discrimination must fall."

The decision in the former case, above set forth, is one which the statute expressly requires the patent-office to make. The decision in the other case is one which the patent-office has by its rules of procedure required itself to make. Whether this distinction is, as complainants contend, a purely arbitrary one, or whether it does in fact connote a substantial difference in the attitude of the patent-office towards questions which it is required by express statute to answer, and towards those which it volunteers to ask and answer, it is still a perfectly apparent distinction. On one side or other of the line indicated each case as it arises can be at once grouped. In the opinion heretofore filed authorities were cited to the proposition that under the uniform ruling of the courts of the United States for more than half a century, if there had been no decision on the patent by a United States court, on the merits, a preliminary injunction would be refused, except where the complainant showed sufficient acquiescence by the public, or where the validity of the patent was not attacked or needed no argument in its sup-

port. This ruling was accepted as a "wholesome and salutary one." Within the past 10 years, however, numerous decisions in this and other circuits have accepted certain determinations of the patent-office as the equivalent of a decision on the merits by a federal court. Whether, in view of the present current of decision in the supreme court, and of the character of many of the patents which are presented for adjudication, these determinations should hereafter be accorded the same weight as heretofore, need not now be considered. It seemed sufficient, for the purposes of the motion for a preliminary injunction, to show that all the patent-office determinations up to this time accepted by the courts had been such as a statute required that office to make. The denial of complainants' motion in the case at bar was but a refusal to advance the existing rule beyond the limit already reached, or to give the same weight to determinations made by the patent-office solely because of the requirements of its own procedure. Though the line between these two groups may be arbitrary, it is well defined, and, having followed the authorities up to such line, this court now declines to take the step which will establish a precedent for passing it.