## IMPERIAL BRASS MFG. CO. v. HACKNEY.

### No. 5175.

Circuit Court of Appeals, Seventh Circuit.
Jan. 2, 1935.

Rehearing Denied April 3, 1935.

Walter F. Boye, of Chicago, Ill., for appellant.

J. Bernhard Thiess and Bertram Wm. Coltman, both of Chicago, Ill. (Earle W. Evans, of Wichita, Kan., of counsel), for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

EVANS, Circuit Judge.

The patent in suit (No. 1,578,725) covers an "acetylene generator." The three claims in issue (3, 4, and 8) cover a particular combination which appellant's device infringes. Avoidance of liability for such infringement

is sought on three grounds: (a) The claims are invalid because of prior invention and the prior use by one Dorsey. (b) The laches of appellee in asserting her monopoly against appellant makes the present appeal to a court of equity, unconscionable and untenable. (c) Neither appellee's title to the patent nor her claim for damages against appellant is established.

On the issues of laches and title we have no hesitancy in affirming the findings and conclusions of the District Court.

**Laches**—There was really no evidence which would justify the court in refusing appellee a decree because of her failure to promptly prosecute this suit. The patent was issued March 30, 1926. Suit was begun March 30, 1932. Patentee died intestate November 19, 1927, leaving his widow as sole heir at law. The administration of the estate was closed November 15, 1931, and appellee was assigned the property. Appellant made the infringing generators before the patent was issued and continued thereafter to make them, relying upon its conviction that appellee's assignor was not the first inventor of the product covered by the three claims of the patent.

Even though appellee were guilty of laches, it by no means follows that she should be denied an injunction which deals only with future infringements or that she should be denied all damages. Wolf, Sayer & Heller v. U. S. Slicing Machine Co. (C. C. A.) 261 F. 195; Meyer Mfg. Co. v. Miller Mfg. Co., 24 F.(2d) 505 (C. C. A. 7). Laches should not be confused with estoppel for in the latter there is an element not present in the former. Meyer Mfg. Co. v. Miller Mfg. Co., supra.

Patentee's death within two years of the issuance of the patent would have excused delay if appellee needed an excuse, but the evidence, which we will not attempt to set forth in detail fails completely to make a case of laches.

**Title**—Appellee's husband was the owner of the patent when he died intestate. The estate was administered, and a final decree entered wherein the property was assigned to appellee, the widow who, in Missouri, was the next of kin of said deceased. No mention was made in the decree assigning the estate, of the patent or the claim of damages arising out of its infringement. However, the administration of the estate was later reopened and the decree was amend-ed "nunc pro tunc" in 1933 so that the patent and all claims for damages were assigned to appellee. Under these circumstances her right to maintain a suit and recover damages for infringement of the patent is clear. We also entertain views similar to the District Court, namely, that the right of the assignee in the Probate Court, to the patent and her right to maintain this suit were secure without the so designated nunc pro tunc amended final decree. De La Vergne Ref. Machine Co. v. Featherstone, 147 U. S. 209, 13 S. Ct. 283, 37 L. Ed. 138.

There remains the question of validity, assailed on the ground of prior practice. It must be admitted that we here approach a more serious question, not entirely free from doubt. This issue is one of fact. The uncertainties of human memories concerning acts, transactions, and dates some fourteen years past, contribute to the difficulty of deciding this issue concerning which counsel freely charge reckless swearing, if not perjury.

The issue which confronts us is not a new one. Over it the parties waged a prolonged and heated battle in the Patent Office. The present ill feeling was enhanced no doubt by the personal relations of the parties. Dorsey was an employee of Hackney. He left Hackney to enter appellant's employment. Charges of theft, bad motives, and perjury were the sequence to the contest which was waged in the Patent Office over the control of this invention. Both Dorsey and Hackney sought a patent monopoly that covered the same structure. It is a case where the difficulty of ascertaining the truth grows as the time from the discovery increases, and it is harder to reach a satisfactory conclusion from a reading of the printed page than from seeing and hearing the witnesses give their testimony. Moreover, one of the parties died shortly after the interference contest in the Patent Office, and therefore the District Court was denied the privilege of seeing and hearing him. In the Patent Office contest, Hackney was living and therefore able to repel the assaults on his integrity and the attacks on the veracity of his word. The interference proceeding in the Patent Office was an unrestricted one. It involved the veracity and the accuracy of statements of two inventors, one Dorsey described in the brief of his counsel as "a seasoned inventor," and Hackney, who was a novice in the patent soliciting business. The loser declared he lost thru an erroneous ruling. Hence, his request for a second trial. But, alas, Hack-

ney is not here to do battle and to sustain his previously given testimony.

When did Hackney make his discovery? When, Dorsey?

The latter was asked by Patent Office ruling in 1927, to give the exact date of his discovery. Realizing that the controversy was over dates he made answer in writing and under oath, that his discovery went back to July or August, 1919. Hackney then established to the satisfaction of the patent examiner that his discovery was made and reduced to practice in 1918. Whereupon, Dorsey, through his lawyer, asked leave to change the date of his discovery from 1919 to 1917. The examiner refused to allow him to do so (so appellant says) and found in favor of Hackney. The District Court relied largely upon the examiner's finding (appellant says, "accepted examiner's finding and ruling without question"), and decided the issue of prior public use in favor of appellee.

■ Appellant earnestly argues that the issue of validity in an infringement suit raises issues which are different from those presented in an interference proceeding. We agree with him. The defense of prior public use in an infringement suit where validity is assailed is not barred because of a decision in the Patent Office in an interference proceeding. One contest is between inventors. Priority of invention is the issue. In the infringement suit we cannot ignore the interest of the public. The issue,—who was the first to make the discovery? The alleged prior use may not be limited to that offered by the contesting inventor in the interference suit. The parties are not, or may not, be the same.

But where the contested issue in the two proceedings (the interference and the infringement suit) is the same, and the disputed issue of fact is identical, why shouldn't the determination of the contest in the Patent Office assume well nigh dominating importance in the determination of the infringement suit? Grant that the ruling of the examiner is not res adjudicata—that the finding in the interference contest may be shown to be erroneous—yet the rule applies, namely that where the evidence is practically the same and the issues are identical, and the determination of the issues turns upon the question of veracity, the second trier of fact must of necessity give much weight to the finding of the first trier of fact. This is so regardless of the status of the second trier of fact.

The importance of the first finding likewise increases when it appears that before the second trial one of the parties whose word is directly in issue, dies.

■ In this case appellant's counsel argue that the first trier, whose findings were accepted by the second trier without independent study, made his findings on a ruling which excluded all the rebuttal evidence, and therefore its findings are not entitled to as much weight as it otherwise would carry. In other words, the ruling of the Patent Office against Dorsey, who attempted to change the date of his discovery from 1919 to 1917, might have been a proper one as against Dorsey, but was not applicable to appellant or to the public against whom there is no legal or moral estoppel. We are not inclined to avoid or lessen the force in this logic. We could not, if we desired, do so. But the right to make the contention may be clear and yet the frailty of the evidence still be present. Appellant stands almost in Dorsey's shoes. It offers as the cornerstone of its evidence structure the testimony of Dorsey. Unfortunately, Dorsey's testimony crumbles in this court as it did in the Patent Office, and for the same reason, and thus lets down the whole structure. In other words, Dorsey can not get away from the position solemnly taken by him in writing to the effect that he made his discovery in 1919. He is caught in the inescapable grasp of his own admission. Appellant labors under a heavy burden— a well nigh insurmountable obstacle—imposed upon it by the previous testimony of Dorsey.

The Patent Office issued the patent to Hackney after a thorough contest in the Patent Office instituted by Dorsey. Concede as we do that appellant has the right to attack the validity of the patent, alas, for it, the proof it offers, is limited to the same testimony as was given in the Patent Office. Its prior public use was that of Dorsey. Its case is then no stronger than was made by Dorsey in the Patent Office.

Moreover, we are not convinced that the Patent Office did not read and heed Dorsey's rebuttal proof in support of his position that the first date given by him, to-wit, 1919, was erroneous. On what the Patent Office based its decision is not clear. It is at least as inferable that all of the evidence was heard and considered as it was that the testimony given on rebuttal was excluded. While the record is not entirely satisfactory appellant has not convinced us this evidence was not considered.

Under all the circumstances, we are convinced that the issue settled by two triers of fact should be decided as it was by them decided, in favor of appellee.

Other questions raised upon this appeal do not, we believe, require special discussion.

The decree is

Affirmed.