**JOHN MORRELL & CO. v. DOYLE et al.**

No. 831–D.

District Court, E. D. Illinois.

July 31, 1937.

Mason, Fenwick & Lawrence, Charles R. Fenwick, and E. G. Fenwick, all of Washington, D. C., and Gunn, Penwell & Lindley, of Danville, Ill., for plaintiff.

Rogers, Woodson & Rogers, of Chicago, Ill., and Acton, Acton & Baldwin, of Danville, Ill., for defendants.

LINDLEY, District Judge.

Plaintiff, engaged in packing and selling meat products, including dog food, brings this suit against defendants Boyd W. Doyle, Frederick Doyle, and the same parties as a copartnership, trading under the name and style of Doyle Packing Company, likewise engaged in packing and selling dog food. Plaintiff charges that its trade-marks "Heart" and "Red Heart" are infringed by the defendants' trade-mark "Strongheart." The basis of plaintiff's trade-mark is a red colored heart, used on many of its products including dog food, accompanied at times by the word "Heart" and at times by the words "Red Heart." Defendants use the picture of the head of a police dog in a circle and the word "Strongheart"; the basis for same, according to the testimony, being the name of a deceased dog prominent in the annals of moving pictures. The latter's figures are not colored in red but are generally gray in color.

At the outset we are confronted with the question of whether the judgment in a prior proceeding is an estoppel against defendants to deny the validity of plaintiff's trademark and infringement thereof by themselves. One of the members of defendant copartnership applied October 11, 1932, for registration of the trade-mark "Strongheart" for dog and cat food. Later, in the course of proceedings, the application was assigned to the copartnership. Plaintiff entered its appearance in opposition to the granting of the trade-mark on December 14, 1932. The applicant filed its answer thereto on February 1, 1933; evidence was submitted by both parties. The examiner held that the word "Heart" was an essential feature of both marks and upheld the opposition. The applicant filed an appeal on July 16, 1934, and on February 19, 1936, the Commissioner of Patents affirmed the decision of the examiner. On May 31,

1936, the applicant perfected an appeal to the Court of Customs and Patent Appeals, and on March 29, 1937, that court affirmed the decision of the commissioner.

Prior thereto, on March 31, 1936, plaintiff had filed this suit, in which it set forth the proceedings mentioned, including the then pending appeal to the Court of Customs and Patent Appeals. Later, in an amendment, it set forth the decision of the court and asserted that as a result thereof defendants are estopped to contest probability of confusion between the marks.

In their answer defendants admit the binding effect of the decision as to the issues there involved but deny that the proceedings, marks, and parties were the same as in the present case and that the issue of probability of confusion in the trade considered by the Court of Customs and Patent Appeals is the same as that involved here. In other words, they admit that the decision of likelihood of confusion between the marks as presented to that court is final on the question of the right to register the marks Strongheart, but deny that they are now estopped to present evidence that "there is no likelihood of confusion in trade as between the goods of the respective parties."

It is obvious that the parties are the same. Though Frederick Doyle was not in his own proper person a party to the former proceedings, the Doyle Packing Company was, and he, as a member of that copartnership was privy to the principal in the litigation.

To determine whether the issues in the two proceedings are the same, it is necessary to consider the applicable acts of Congress. The trade-mark statute created by the Act of February 20, 1905 (as amended, 15 U.S.C.A. § 81 et seq.), provides that the owner of a trade-mark may obtain registration by complying therewith; that no mark shall be registered which "so nearly resemble a registered or known trademark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers." Section 5, as amended (15 U.S.C.A. § 85). Under the act any person who believes he may be damaged by the registration may oppose the same in the Patent Office. If an application is made for the registration of a trade-mark which is substantially identical with a trade-mark appropriated to goods of the same descriptive properties, for which a previous registration has issued or a mark "which so nearly resembles such trade-mark or a known trade-mark owned and used by another, as is, in the opinion of the commissioner, likely to be mistaken therefor by the public, the commissioner may declare that an interference exists and direct the examiner to determine the question "of the right of registration to such trade-mark and of the sufficiency of objections to registration." The practice is the same as that in interferences upon applications for patents, and the procedure is governed by the rules in equity in the United States courts.

It is obvious that the commissioner is charged with the duty of determining (1) priority of adoption and use; (2) similarity of the goods; (3) similarity of marks or likelihood of confusion or mistake in the mind of the public or to deceive purchasers. The act (section 9) provides for an appeal from the decision of the examiner to the commissioner and for a further appeal to the Court of Appeals of the District of Columbia (by amendment, to the United States Court of Customs and Patent Appeals). See section 89, U.S.C.A. title 15, section 309a, U.S.C.A. title 28.

There is no dispute as to priority, plaintiff having adopted and used the words "Red Heart" on April 2, 1932, for dog food, and defendants having used the word "Strongheart" as of August 4, 1932, for dog food. The products were the same.

The controverted issue in the proceedings mentioned was the similarity of the marks or the likelihood of confusion in the minds of the purchasing public. The court held against defendants, and the immediate question is as to the binding effect of such decision. There is no precise precedent fully answering the contentions of the parties here as to the effect of the decision.

Defendants contend that the issue submitted to the court was a limited one, bearing only upon their right to register, and that the issue here is much broader and includes much more as to the respective rights of the parties in the trade. It is true that the court had to decide the ultimate questions of right to registration, but it is apparent that in doing so, in pursuance of the statute, the court was called upon to determine whether there was likelihood of confusion. The testimony in that cause

and that in the present cause were substantially the same.

It should be observed that section 4915 of the Revised Statutes, as it was originally adopted (35 U.S.C.A. § 63), provides that when an application for patent is refused, the applicant may have a remedy by a bill in equity and, upon adjudication in favor of the applicant, that the court trying the issue shall direct the commissioner to issue the patent. Such suit is a bill in equity upon which testimony can be introduced de novo and is in the nature of a proceeding to set aside the conclusions of the commissioner. Prior to March 2, 1927, the suit could not be filed until after an appeal from the Commissioner of Patents to the District of Columbia Court of Appeals. Consequently it was likewise a direct attack upon the decision of the latter court.

On March 2, 1927 (44 Stat. 1336, § 11), the statute was amended to provide that the bill to obtain a patent could be filed only when no appeal had been taken from the decision of the commissioner to the United States Court of Customs and Patent Appeals, but that, in the absence of such appeal, the remedy would lie as previously provided. Consequently it appears that under the present statute as amended (35 U.S.C.A. §§ 63), an applicant for patent or trade-mark, defeated by the commissioner, may appeal and obtain an adjudication in the Court of Customs and Patent Appeals or he may, if he takes no such appeal, file a bill in equity to obtain a patent. It seems obvious that Congress has given him an option to prosecute an appeal from the decision of the commissioner as was done here and, in the absence of such appeal, to file his bill in equity. If he files his appeal, he has no right to prosecute his bill to procure a patent. Such was the conclusion of the court in the unreported case of United States Gypsum Company v. American Gypsum Company, Equity No. 1621 in the United States District Court of the Northern District of Ohio.[1] Judge Stringham held that the applicant, having taken no further proceedings under section 4915, was precluded thereafter from raising the question of priority.

It would seem apparent that the one essential issue of fact decided by the Court of Customs and Patent Appeals was the same as that presented here and that the finding of that court creates an estoppel against defendants to reassert their contentions there made upon which they were defeated. True, the commissioner acts in a purely administrative capacity, and to a certain extent, upon appeal from his decision, the court acts in a similar capacity. But it does not necessarily follow that the decision of the commissioner, upheld by that of the Court of Customs and Patent Appeals, does not constitute a judicial hearing within the sense of that term as used in determining whether an estoppel exists. Thus in U. S. v. Duell, 172 U.S. 576, 19 S.Ct. 286, 43 L. Ed. 559, the Supreme Court held that a decision of the Court of Appeals on appeal from the Patent Office in a patent interference case was a judgment, and Mr. Justice Matthews remarked in Butterworth v. United States, 112 U.S. 50, 5 S.Ct. 25, 28 L.Ed. 656 that the decision of the commissioner is quasi-judicial.

In Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 773, 38 L.Ed. 657, Justice Brewer held that the remedy under section 4915, as it then existed, was one authorizing a direct attack upon a judgment and that, in the absence of that right, the decision of the Patent Office "was a finality upon every matter of fact." He further held that "where the question decided in the Patent Office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties," unless, in an action under R.S. 4915, authorizing a direct attack, "the contrary is established by testimony which in character and amount carries thorough conviction." In view of the amendment to 4915, when defendants prosecuted their appeal they waived their remedy under 4915. Hence that remedy no longer exists and the language of Justice Brewer as to the effect of the decision of the Patent Office, affirmed by the Court of Customs and Patent Appeals, becomes directly applicable.

In Hanford v. Westcott, Fed.Cas.No. 6,022, Judge Nixon held that the decision of the Examiner of Interferences in an interference concerning a trade-mark is conclusive upon the parties and their privies and unquestionable in any other tribunal, saying: "In the present case the applicant, Wharton, would have been permitted to withdraw his application for registration

---

[1] No opinion for publication.

as soon as the interference was declared, and to go into the courts for redress. He elected to attempt to prove his right before the examiner of interferences. He put in his testimony and acquiesced in the decision against him without appeal, and it is too late to assert that he is not bound by the result of the contest. A matter is always held to be res. adjudicata where the question has been determined by a tribunal of competent jurisdiction, and where there is a concurrence of identity of parties, or privies claiming under them, and identity of purpose or object. Freem.Judgm. § 252; Aspden v. Nixon, 4 How.(45 U.S.) [467] 497 [11 L.Ed. 1059]."

Following this decision, Judge Acheson, in Peck, Stow & Wilcox Co. v. Lindsay, Sterritt & Co. (C.C.) 2 F. 688, held defendants estopped to contest priority of invention in view of the decision against their assignors in interference proceedings. This holding was limited, however, to priority of invention.

In Holliday v. Pickhardt (C.C.) 12 F. 147, the court held the defendant estopped to contest the operativeness of plaintiff's device where the same issue had been raised in the Patent Office and decided against him. To the same effect are Shuter v. Davis (C.C.) 16 F. 564; Dickerson v. De La-Vergne Refrigerating Machine (C.C.) 35 F. 143 (limited, however, to priority).

In Victor Talking Machine Company v. Brunswicke-Balke-Collender Company (D. C.) 290 F. 565, the court concluded that the judgment on appeal from the Patent Office was an estoppel and that its conclusions though not final were binding unless overcome by evidence carrying thorough conviction.

In United Shoe Machinery Co. v. Muther (C.C.A.) 288 F. 283, the court had before it an infringement suit involving priority of invention. The issue had previously been decided in an interference proceedings between the same parties. The court held that the commissioner of patents was an administrative officer charged with administering the patent laws, and that the same presumption should be applied to his acts and decisions as any other administrative officer, and that where the statute authorizes such officer to investigate and decide questions upon which parties' rights are to rest, the conclusion is final.

In Automatic Weighing Machine Co. v. Pneumatic Scale Corporation (C.C.A.) 166

F. 288, 289, the court held that such a decision, if not final, "is entitled to great weight." To the same effect is Imperial Brass Manufacturing Co. v. Hackney (C. C.A. 7) 75 F.(2d) 689, 691, where Judge Evans said: "But where the contested issue in the two proceedings (the interference and the infringement suit) is the same, and the disputed issue of fact is identical, why shouldn't the determination of the contest in the Patent Office assume well nigh dominating importance in the determination of the infringement suit? Grant that the ruling of the examiner is not res adjudicata —that the finding in the interference contest may be shown to be erroneous—yet the rule applies, namely that where the evidence is practically the same and the issues are identical, and the determination of the issues turns upon the question of veracity, the second trier of fact must of necessity give much weight to the finding of the first trier of fact. This is so regardless of the status of the second trier of fact."

In Puget Sound Electric Railway v. Lee (D.C.) 207 F. 860, Judge Neterer made what seems to me a correct analysis of the principles governing in such cases. There a public service commission was created by the laws of the State of Washington with power to regulate railroad rates, with the right in the railroad company to maintain a suit in the superior court to review any order of the commission. He concluded that the court's decision, authorized by the statute, estopped the railroad company from raising the same question in a federal court proceedings to restrain the commission. He relied upon Oregon R. R. & N. Co. v. Fairchild, 224 U.S. 510, 32 S.Ct. 535, 539, 56 L. Ed. 863, where the court held that when an adequate opportunity is provided for hearing before the commission and for judicial review, the decision entered in such proceedings is final and controlling, saying: "having been given full opportunity to be heard on the issues made by the complaint and answer, and as to the reasonableness of the proposed order, and having adopted the statutory method of review, this company cannot complain."

█ Estoppel by judgment or the binding effect of any finding of fact essential to judgment does not depend at all upon the character of the court. The decision may be that of an inferior court, such as a justice of peace; but, if unappealed, it is controlling and binding upon all the parties

thereto and their privies not only as to the issues that were actually raised and determined but as to all issues which might have been presented and upon which testimony might have been submitted.

A trade-mark which if used is likely to be confused with another prior in time may not be registered. Just as clearly, tested by common-law rights, it may not be used. So one issue in the Court of Customs and Patents Appeals was whether there was likelihood of confusion; here, likewise, the essential question of fact is the same. That court having had jurisdiction of the parties and having decided the essential question of fact adversely to defendants, the latter may not relitigate the adjudicated issue; they are estopped by verdict, even though the issue then was the right to register and here it is the right to use. One may no more use then he may register a mark likely to confuse. If when a court finds that he may not register a mark because it is confusing, it follows, for the same reason, that he may not use it.

So the controversy between these parties over the precise question of fact here involved has been settled by the statutory tribunal, the administrative officer, and confirmed by a court upon appeal in a proceedings where both parties had an opportunity to present their evidence. If we are to give any degree of permanency to finality of litigation by judgments entered, and to the adjudication of facts necessary to a · decision, we must recognize the controlling effect of the findings and resulting decision of the United States Court of Customs and Patent Appeals made in this case. That court heard and determined the basic question of fact presented to this court. I attribute finality to the adjudication, and doing so, I am without right to decide otherwise.

If the decision of the Court of Customs and Patent Appeals is not a binding adjudication, still, under the rule as announced by Judge Evans in Imperial Brass Manufacturing v. Hackney, supra, the determination of the contest in the Patent Office assumes "well nigh dominating importance in the determination of the infringement suit," and where the evidence is practically the same and the issues identical, the second trier of facts must give much weight to the finding of the first trier. As said by other courts in the cases above cited, the conclusion of the first trier of facts is binding unless overcome by evidence carrying thorough conviction. The evidence in the present case does not carry such conviction. Indeed, the evidence of confusion in radio advertising is apparent. Consequently, should my conclusion as to the binding effect of the finding of the 'Court of Customs and Patent Appeals be erroneous, the evidence here is not sufficient to convince me that likelihood of confusion as determined by that court does not exist. Indeed, I am impelled to conclude that such likelihood does exist, especially in radio advertising where the pictures are not before the public but only the words "Red Heart" and "Strongheart." Were the labels with their different colors put into such advertising by television, the conclusion might be different.

Defendants insist that plaintiff has no right to a monopoly in the use of the word "Heart." There is ample evidence, however, of a secondary meaning commonly attributed by the public to the words "Red Heart," as applied to dog food. Under well-known decisions, this is sufficient to justify registration and use.

Inasmuch as I find that defendants have no right to use the trade-mark "Strongheart" with the picture of a dog, it follows that their counterclaim against the plaintiff for alleged wrongful use of pictures of dogs must be denied. Furthermore, the evidence shows that such pictures have long been used in connection with labels on dog food.

Plaintiff's trade-mark is registered, valid and infringed, as set forth in its bill of complaint. There will be a decree as prayed.