## JOHN MORRELL & CO. v. DOYLE et al.
### No. 6446.

Circuit Court of Appeals, Seventh Circuit.

May 9, 1938.

Rehearing Denied June 29, 1938.

Edward S. Rogers, William T. Woodson, and James H. Rogers, all of Chicago, Ill., and Donald S. Baldwin, of Danville, Ill., for appellants.

Horace E. Gunn and Harold F. Lindley, both of Danville, Ill., and Edward G. Fenwick, Charles R. Fenwick, and Stuart T. Saunders, all of Washington, D. C., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from an order granting an injunction and accounting in a trademark case. The plaintiff is a packer of meat and food products, while the defendants are dog food manufacturers.

Plaintiff, as early as 1899, registered the word Heart in association with the outline of a heart for cured meats. Afterwards, similar registrations were made for a wide variety of products including dairy, hog, stock, and poultry feeds of various kinds. On May 17, 1932, plaintiff filed an application in the United States Patent Office for the words "Red Heart" and the picture of a heart in connection with dog food which matured into Registration No. 308,670, dated December 12, 1933. Application for the words Red Heart alone was filed April 26, 1934, maturing in Registration No. 317,414, dated September 25, 1934. Plaintiff's first use of the trade-mark, Red Heart, on dog food was in April, 1932. The mark, at that time, consisted of the words Morrell's Red Heart Brand, displayed upon the representation of a Red Heart. Plaintiff's trade-mark for dog foods adopted in January, 1934, consists of the words Red Heart alone superimposed upon the representation of a Red Heart.

Defendants adopted the trade-mark Strongheart August 4, 1932. At that time they had established brands such as Doyle's Supreme, Rowdy, and Cal Chow. This trade-mark was used only in connection with the picture of Strongheart, the motion picture dog featured in several motion pictures from 1921 to 1926. The mark was in the form of a circle, with the picture of the dog in the center and the word Strongheart appearing in a semicircular form above the picture of the dog. The latter mark was colored in gray in contrast to plaintiff's color of red.

Defendants under date of October 11, 1932, filed an application in the United States Patent Office for registration of the trade-mark Strongheart for dog and cat food, which mark was opposed by the plaintiff on December 14, 1932. The Examiner of Interferences held the word Heart was a dominant feature of both marks and that there was likelihood of confusion. Upon

appeal this holding was affirmed by the Commissioner of Patents, and upon further appeal the Court of Customs and Patent Appeals, under date of March 29, 1937, affirmed the decision of the Commissioner of Patents. Doyle v. John Morrell & Company, 88 F.2d 721.

Plaintiff's bill pleads the decisions of the Patent Office tribunals, including that of the Court of Customs and Patent Appeals, and urges the position that the decision of that court is final and res adjudicata in the instant suit, and that as a result thereof, defendants are estopped to urge and present evidence in an attempt to show there is no likelihood of confusion in trade between the respective parties. The District Court sustained plaintiff's contention (John Morrell & Co. v. Doyle et al., 20 F. Supp. 110) and found as a conclusion of law: "Where the Patent Office is authorized by statute to decide certain issues and the parties submit the jurisdiction and the issues are decided, the findings become res adjudicata as to the issue of fact and law in a technical trade-mark infringement suit where the parties, the marks, and the goods are the same."

We must first dispose of the question as to whether this is a correct pronouncement of law. In thus determining, it is material, but perhaps not conclusive to ascertain whether the issue before the Court of Customs and Patent Appeals was the same as that here presented. There, as we understand, the court was considering merely the words Red Heart and Strongheart unaccompanied by other features. The court on page 721 of 88 F.2d said: "As the issue comes to us, the only question to be determined is that of likelihood of confusion in trade by reason of the similarity of the marks. Upon this we think there is small room for doubt."

It seems apparent that the court did not consider the manner in which defendants' mark was used, but was dealing merely with the naked word Strongheart. Thus, on page 722, it is said: "These pictures, however, being no part of the marks, are not of particular importance in this statutory proceeding. We have simply compared the naked marks with each other, and from the comparison it seems to us unquestionable that there is likelihood of confusion in trade from their use upon identical goods."

The issue there was merely the right to register, while here is presented, as disclosed by plaintiff's bill, the right to the use of the word Strongheart in connection with the manufacturing and sale of dog foods from which it necessarily follows that it is the use which is complained of. No damages could be predicated upon the use of the word Strongheart without taking into consideration the manner and circumstances surrounding its use. The Court of Customs and Patent Appeals, as its opinion clearly indicates and as was incumbent upon it, in determining defendants' right to register, reached the conclusion that there was likelihood of confusion in trade by reason of the similarity of the marks. This was nothing more than an opinion, the accuracy of which only the future might reveal. It was not a determination of an existing or passed fact or event, but was of a speculative nature as to what was likely to subsequently occur. The issue here is not what may occur, but what has actually taken place. The bill is thus predicated, otherwise no cause of action is stated. We think the cases cited and relied upon by plaintiff and which seem to have been controlling in the mind of the District Judge, may generally be distinguished as cases where the Patent Office and the Court of Appeals of the District of Columbia (now Court of Customs and Patent Appeals) were dealing with questions of fact rather than opinions speculative in nature. Typical of such cases is Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 773, 38 L.Ed. 657, where the question before the Patent Office related to priority of invention. That issue was one of fact capable of precise determination. Even then, the Supreme Court only held "the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction." Even on this issue of fact the court was far from holding that a determination of such was res adjudicata.

Other cases cited by the District Court merely go to the extent of holding that the decision of the Patent Office upon a question of fact is entitled to great weight. Among these is that of Imperial Brass Manufacturing Company v. Hackney, 7 Cir., 75 F.2d 689, on page 691, where this court said: "But where the contested issue in the two proceedings (the interference and the infringement suit) is the same, and the disputed issue of fact is identical, why shouldn't the determination of the contest in the Patent Office assume well nigh domi-

nating importance in the determination of the infringement suit?"

There are numerous authorities in support of defendants' contention that the proceedings or decisions by the Commissioner of Patents or the Court of Customs and Patent Appeals, as it is now known, is not final or res adjudicata. In Postum Cereal Company v. California Fig Nut Company, 272 U.S. 693, on page 698, 47 S.Ct. 284, 285, 71 L.Ed. 478, the court said: "The decision of the Court of Appeals under section 9 of the act of 1905 [15 U.S.C.A. § 89] is not a judicial judgment. It is a mere administrative decision. It is merely an instruction to the Commissioner of Patents by a court which is made part of the machinery of the Patent Office for administrative purposes. In the exercise of such function it does not enter a judgment binding parties in a case as the term case is used in the third article of the Constitution."

In Proctor & Gamble Company v. J. L. Prescott Company, 30 U.S.P.Q. 163, we find this pertinent comment:

"The Patent Appeals Court determines the correctness of the Commissioner's ruling on registrability of the trade-mark, whereas the jurisdiction of the district and circuit courts involves the right to use.

"In the decision of that court it is apparent that the question of opinion and supposition was controlling."

The Court of Customs and Patent Appeals itself recognizes that its decisions are not conclusive and has frequently said so. In Goodrich Co. v. Kenilworth Mfg. Co., Inc., Cust. & Pat.App., 40 F.2d 121, at page 122, is found this striking statement by Judge Garrett:

"The function of the Commissioner of Patents in administering the Trade-Mark Act is administrative in character. It is derived wholly from the statute, and he is governed by its terms. The jurisdiction of this court in the cases appealed from the Commissioner is likewise purely statutory and we are limited in the same way that the Commissioner is limited. Vide Postum Cereal Co. v. California Fig Nut Co., 272 U.S. 693, 698, 699, 47 S.Ct. 284, 71 L.Ed. 478.

"The duty of the Commissioner and of this court on appeals from the Commissioner, in all cases, is simply to determine whether an application meets the statutory requirement so as to be entitled to registration. Registration being granted or refused leaves the parties in interest, with their rights and equities, under the common law, legally unaffected, except as they may be enforced under sections 16 and 17, 15 U.S. C.A. §§ 96 and 97."

To the same effect is Hellmann, Inc., v. Oakford & Fahnestock, Cust. & Pat.App., 54 F.2d 423, 425, and National Biscuit Co. v. Sheridan, Cust. & Pat.App., 44 F.2d 987, 989. Many courts have held the rule of res adjudicata inapplicable and some have even gone so far as to hold that the decision of the Patent Office is not even persuasive.*

■ It is apparent that the Court of Customs and Patent Appeals has jurisdiction with reference to patents or trade-marks only to review questions appealed from the Commissioner and to give that official directions with reference thereto. Surely that court has no authority to proscribe the use of the word Strongheart. If its judgment is to be regarded as final, then it would seem that such a court would have the inherent power to protect its judgment by injunction or otherwise, but the fact is it has no such right or power.

Thus we conclude that the decision of the Court of Customs and Patent Appeals is not final. We are also of the opinion that the right to use presents an issue separate and distinct from the right to register. Even though our opinion in this respect be erroneous, it does not alter our ultimate conclusion.

■ It is the contention of plaintiff that even though such a construction might have at one time been tenable, it is no longer so since the amendment of March 2, 1927 to R.S. 4915, 35 U.S.C.A. § 63, which it is claimed requires an election between an appeal to the Court of Customs and Patent Appeals and an equity proceeding as therein provided. It is true, by this amendment, a remedy is provided by bill in equity, provided an appeal has not been taken to the Court of Customs and Patent Appeals. In

---

* Frasch v. Moore, 211 U.S. 1, 29 S. Ct. 6, 53 L.Ed. 65; Kuhlke Mach. Co. v. Miller Rubber Co., D.C., 8 F.2d 614, 616; United Shoe Machinery Corporation v. Muther, 1 Cir., 288 F. 283, 285;

Tillman & Bendel, Inc., v. California Packing Corporation, 9 Cir., 63 F.2d 498, 503; Textile Publishing Company v. Art Metal Construction Co., 1 U.S.P.Q. 223.

236

other words, if an appeal is taken to the latter tribunal, it forecloses the right to maintain a bill in equity. The effect of this amendment has not been judicially determined. We are of the opinion, however, that such amendment does not affect the question here presented. The fact is, the defendants appealed to the Court of Customs and Patent Appeals in the same manner as they might have done prior to the amendment. The fact that there was created another forum where they might have litigated the question in controversy could, in our judgment, have no bearing upon the effect to be given to the judgment of the Court of Customs and Patent Appeals. Its jurisdiction, power, and duty were not affected by the amendment and its judgment was no more final than before.

■ We now come to the merits of the controversy. There seems to be considerable confusion as to just what issue is presented in cases of this character and what may be taken into consideration in a determination of the same. It is plaintiff's contention that the involved issue must be determined merely by a comparison of plaintiff's trade-mark, Red Heart, or Red Heart superimposed upon the representation of a Red Heart with the word Strongheart which was sought to be registered by defendants. With this contention we do not agree. In plaintiff's bill of complaint, we find among others, the following allegation: "That the said acts of defendants herein complained of were knowingly and intentionally committed, are contrary to equity and good conscience, a fraud upon the public, and constitute an infringement of plaintiff's said trademarks and unfair competition in trade with the plaintiff, and a fraudulent invasion and violation of plaintiff's rights; that said acts of defendants are calculated to deceive and have deceived purchasers and necessarily enable and promote false, fraudulent and unfair appropriation and use of the said trade-marks of plaintiff, and fraudulent and unlawful sale of said products to members of the purchasing public in the belief that said products are manufactured and sold by the plaintiff."

Inasmuch as the record discloses that the defendants only used the word Strongheart in a certain way, we think it is the manner and circumstances under which the name was used that must be considered in determining whether such use was an infringement of the rights possessed by the plaintiff by reason of the registration of its marks.

We think this conclusion is sustained by Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 24, which plaintiff relies upon as a correct interpretation of the issue involved in such cases. Says the court on page 34: "The complainant has the right to the exclusive use of its annular band upon its packages of baking soda and baking powder for the purpose of distinguishing the origin and character of its products from those of all other manufacturers and dealers, and any one who affixes that trademark to similar articles in such a way that his use of it is liable to cause confusion in the trade, or is calculated to mislead purchasers and induce them to buy his articles as the goods of the complainant, deprives the latter of the full benefit of its property and becomes an infringer. The use of any simulation of a trade-mark which is likely to induce common purchasers, exercising ordinary care, to buy the article to which it is affixed as the product of the owner of the trade-mark, is an infringement of the owner's right and entitles him to equitable relief. McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828; Kann v. Diamond Steel Co., 89 F. 706, 711, 32 C.C.A. 324, 329; Walter Baker & Co. v. Puritan Pure Food Co. (C.C.) 139 F. 680, 682."

■ This seems to support the theory that infringement, if such there be, must be determined from the manner and circumstances surrounding the use of the mark complained of, so in this case it is not a question as to the effect which the word Strongheart has upon the trade, but the use of the word Strongheart in connection with the picture of a dog. In other words, defendants' label, as it appears upon its product when placed upon the market, may properly be compared with plaintiff's trademark. As was said in Layton Pure Food Co. v. Church & Dwight Co., supra, 182 F. 24, at page 34: "The packages of the complainant and those of the defendant are before us. A description or reproduction of them would not aid in the determination of subsequent cases. The labels of the defendant are by no means identical with those of the complainant. They differ in their colors, in the devices within the annular bands, and in the names and words upon the packages. But the annular bands constitute a striking feature of the labels of the defendant. The evidence of the eyes is more persuasive and satisfactory than any other. Liggett, etc., Tobacco Co. v. Finzer, 128 U.S. 182, 184, 9 S.Ct. 60, 32 L.Ed. 395; P. Lorillard Co. v. Peper, 86 F. 956, 960, 30 C.C.A. 496,

500; Von Mumm v. Frash (C.C.) 56 F. 830, 837. And when the eyes are turned upon these labels the ocular demonstration is complete that the annular bands upon them give to those of the defendant a marked similarity to those of the complainant, a similarity so plain that it renders them well calculated to create confusion in the trade and to deceive buyers into the purchase of the products of the defendant in the belief that they are those of the complainant."

 A comparison of defendants' product, with that of plaintiff as placed upon the market, convinces us there is no similarity calculated to produce confusion or mislead purchasers and induce them to buy defendants' product under the belief that it is the product of plaintiff. It is apparent that the words Heart and Red Heart are the distinguishing characteristic, not only of plaintiff's mark as registered, but as used in connection with its product, but we do not think this can be said as to defendants' mark as used on its product. There the characteristic feature, the thing which appeals to the eye and which, no doubt, makes the lasting impression upon a person's memory, is not Strongheart or Heart, but the picture of a dog. Assuming that persons who are interested in dog foods are dog fanciers, what could make such an appeal or create such a lasting impression as an imposing picture of a dog and especially if it be the picture of a dog of fame such as the record here indicates to be the case?

We find in the record some evidence of confusion regarding these two brands of dog food, but such evidence, when considered in connection with the volume of the product manufactured and sold, is to us rather insignificant. During the five year period from April, 1932 to April, 1937, the plaintiff sold nearly 102,000,000 pounds of Red Heart dog food with a sale value of something over $7,000,000. It would be possible, no doubt, to procure some evidence of confusion or mistake whatever mark was used by a competitor in such products. Without entering into a detailed discussion of plaintiff's testimony, we refer to that concerning one particular situation which is illustrative of what we regard as the meager proof found in support of plaintiff's contention. During a certain period, plaintiff, in advertising its products, gave premiums in exchange for its Red Heart labels appearing upon its product. Out of more than 100,000 premiums awarded, some 13 to 17 persons sent in Strongheart labels in place of Red Heart. It was shown, however, that plaintiff also received numerous labels of other dog food products such as Ken-L-Ration, Pard, and Rival Dog Food. This testimony, to our minds, not only fails to prove confusion, but has a tendency to demonstrate to the contrary. The testimony offered to show confusion, to our minds, is more logically reconcilable upon the theory of mistake than confusion. The record discloses that in a thorough survey of 196 food stores located in many different cities, that not in a single instance did a clerk hand out a can of Strongheart Dog Food when Red Heart was called for. There is also a satisfactory and convincing showing that both dealers and customers, as might be expected by a comparison of the marks used by the respective parties, associate defendants' mark with the motion picture dog rather than a Red Heart either in name or symbol.

As heretofore indicated, we are of the opinion the District Court erred in holding the decision of the United States Court of Customs and Patent Appeals res adjudicata of the issue here presented. We are also of the opinion that plaintiff failed in substantiating the allegations of its bill of complaint and that it was not entitled to the relief sought and granted by the District Court.

The decree is reversed.