**TEL–O–WAVE, Inc. v. ANDRE, Inc., et al.**
Civ. No. 1352.

United States District Court
D. Utah, C. D.
Dec. 15, 1947.

Soule, Spalding & Day and King & Anderson, all of Salt Lake City, Utah, for plaintiff.

Philip A. Mallinckrodt, of New York City and Harold R. Boyer, of Salt Lake City, Utah, for defendants.

JOHNSON, District Judge.

This is an action for patent infringement. Plaintiff in its complaint alleges that it is the owner of patent No. 2,265,920 issued to James A. Maize on December 9, 1941, for an invention relating to Method and Apparatus for Permanent Hair Waving, and particularly to the permanent waving of human hair. It is further alleged that the defendants for a long time past have and still are infringing this patent by making, selling and using hair waving apparatus embodying said patent invention.

The defendants in their answer deny that their apparatus infringes plaintiff's patent and allege affirmatively that plaintiff's said patent is invalid for various reasons. They also allege by way of counterclaim certain acts of plaintiff constituting alleged unfair competition, against which they pray in injunction and for damages.

By reply plaintiff denies said acts of alleged unfair competition.

At the trial counsel for plaintiff designated Claim 9 of plaintiff's patent as being the claim relied upon as infringed by defendants' device.

Claim 9 reads as follows: "Apparatus for determining the progress of a permanent hair waving operation comprising a pair of flexible conductive plate elements separated by a flexible sheet of non-conductive porous material, the whole forming an electrode assembly adapted to be wound into the curl of hair to be waved, and a source of potential and current responsive means connected in series with said electrodes."

It will be observed that Claim 9 above quoted specifically covers "apparatus", that is, such part of the device as relates thereto, "for determining the progress of a permanent hair waving operation", and describing it as:

(1) "Comprising a pair of flexible conductive plate elements separated by a flexible sheet of non-conductive porous material,

(2) the whole forming an electrode assembly adapted to be wound into the curl of hair to be waved, and

(3) a source of potential, and

(4) current responsive means connected in series with said electrodes."

It will be observed from this general description of the operation of the mechanism as above described in Claim 9 that no indicator by which the operator can determine the progress of the hair towards a permanent waving state has been given or referred to. In plaintiff's patent this deficiency is supplied by the description of a calibrated meter which is so fixed in the apparatus that a needle indicates on the face of the meter the progress of the hair towards a permanent waving state and its completion.

The defendants' device has a small electric light globe which by similar connection with the electrodes in their apparatus tends to show the progress of the waving process by the diminution in the brightness of the globe during the progress of the waving process; the end of the process being indicated by the disappearance of any light in the globe.

It is the claim of the plaintiff that the use of this globe for this purpose and in the manner indicated is the equivalent of the meter described in its patent, and that its use constitutes an infringement.

■ If plaintiff's meter indicator is a basic invention in this field to which it is adapted and applied, its contention might be sound; but if, on the other hand, the use of a globe in the manner and for the purposes to which defendants have applied it, has been described and in use for like purposes in the art of hair waving for a long time, then defendants' use of this globe indicator would not be an infringement of Claim 9 of plaintiff's patent because in that state of the art plaintiff's claim must be limited to the particular apparatus described in its patent, and immaterial departures from it.

Marcel's patent No. 1,643,783, dated September 27, 1927, contains the following disclosure: "I provide means for controlling the current which is permitted to flow through the heater and means for regulating the current and I have also provided a lamp which will indicate the condition existing at all times in the heater. * * * As the liquid in the asbestos coil is gradually vaporized, and the vapors are driven off, the lamp gradually decreases in brilliancy, due to the decrease in the flow of electricity between the electrodes, so that the lamp, by its decrease in brilliancy, indicates the extent of moisture within the heater and therefore the progress of the operation. When most of the liquid has been vaporized and driven off from the asbestos coil the lamp will finally show no light whatever and the current should remain turned on for several minutes after the lamp ceases to show red in the filament. However, the time at which the current may be turned off after this point has been reached is in no sense critical for the following reason:" etc.

In view of that disclosure made more than twenty years ago, I do not think that defendants' use of such a globe for the purposes indicated constitutes an infringement of Claim 9 of the plaintiff's patent as being an equivalent of its meter indicator.

The most that can be claimed for plaintiff's meter indicator, it seems to me, is that it is a patentable improvement over the electric globe indicator theretofore discloses to the industry and now being used by the defendants.

As already indicated the first element mentioned in Claim 9 for determining the progress of a permanent hair waving operation is described as "comprising a pair of flexible conductive plate elements separated by a flexible sheet of non-conductive porous material, the whole forming an electrode assembly adapted to be wound into the curl of hair to be waved."

Electrodes, as described in Claim 9 and as used by the parties respectively in this action, are commonplace to those skilled in the electric field and have been in common use by the hair waving industry in one form or another for many years.

The plaintiff in its electrodes uses aluminum plates. The defendants in their electrodes use zinc plates, with similar porous sheets between their respective plates.

Considering the state of the art at the time plaintiff's assignor applied for his patent, I do not think that the electrode element above mentioned as described in Claim 9 is, in any patentable sense, either new or novel, and I conclude, therefore, that use by the defendants of similar electrodes in their device does not infringe plaintiff's patent.

The second element mentioned in Claim 9 is described as "a source of potential and current responsive means connected in series with said electrodes."

The current in plaintiff's apparatus is derived from a dry battery which supplies a direct current to and through the electrodes bound in the hair of the subject, which current continues until the resistance developed in the electrodes, and perhaps in the hair of the subject, prevents the flow of the current.

The source of the electric energy of defendants' device is an alternating current brought in from the outside lighting system, stepped down by a transformer. This step-ped-down current flowing through the electrodes by the resistance arising therein creates the heat used in defendants' process, and also controls the globe indicator above described.

In the tests made in the presence of the court during the trial on the apparatus of the respective parties, the hair waving result on each apparatus was equally successful. At the conclusion of the tests it was found that the hair tested in plaintiff's apparatus came out without any apparent heat, except that normally in the room, and still damp from the application of the chemical solution applied at the beginning of the test. The hair treated in defendants' apparatus came out warm and comparatively dry as a result of the application of heat created by the electric current from the outside.

I am of opinion that the sources of electric energy used in these devices are so different, both in character and in application, that the plaintiff's low voltage direct current from its dry battery passing through its electrodes and controlling its meter indicator, is not infringed by the defendants in their use of an alternating current from the outside stepped down to produce both heat and a low voltage current passing thorough the electrodes and controlling its globe indicator as above described.

█ It may be that plaintiff's indicator meter and its low voltage battery are, one or both, so new, novel and useful as to be patentable, but whether they are so or not I deem it unnecessary to decide in this case in view of the findings heretofore made and suggested that in no event can it be held that defendants' device infringes Claim 9 of plaintiff's patent.

█ In respect to defendants' counterclaim, I am of opinion that the circulation of the printed notice of the filing of this suit, by the plaintiff at the convention hall in Chicago, was done in good faith and without malice, and therefore am of opinion that the counterclaim must be dismissed.