**LUCIEN LELONG, Inc., Now by Change of Name, Oxford Mercantile Corporation**

v.

**DANA PERFUMES, Inc.**
No. 49 C 1541.

United States District Court
N. D. Illinois.
Dec. 22, 1955.

James P. Hume, Gerrit P. Groen, William E. Anderle, Wilkinson, Huxley, Byron & Hume, Chicago, Ill., for plaintiff and counter-defendant.

James R. McKnight, Chicago, Ill., for defendant and counter-plaintiff.

HOFFMAN, District Judge.

The original complaint herein was dismissed on motion of the plaintiff [1] but jurisdiction was retained to adjudicate a counterclaim filed by the defendant. The counterclaim sought a declaratory judgment that the defendant was entitled to use the words "solid cologne" for the labeling, packaging and advertising of cosmetics, an injunction restraining the plaintiff from threatening infringement suits against the defendant's dealers, distributors or customers for handling the defendant's products so labeled and damages suffered by the defendant from such threats.

A short chronological statement of the principal events relevant to the case seems the clearest way to present the issues involved.

Some time in 1941 Lucien Lelong, Inc., began to manufacture and sell cologne in the form of a homogeneous body, consisting of approximately 75 per cent liquid cologne and 25 per cent soap. The product is one capable of retaining its form and shape, but yields its liquid content when rubbed on the skin. When handled it will neither leak nor spill.

When it first started production of cologne in this form Lelong consulted its trade-mark attorneys as to whether the word "Solid" could be registered as a trade-mark therefor. The attorneys advised Lelong that the word "Solid" as applied to this form of cologne was solely a descriptive use of the word, as the cologne was in fact solid, and hence could not be registered as a trade-mark.

From 1941 to 1948 Lelong manufactured and sold cologne in a non-liquid

1. The original plaintiff was Lucien Lelong, Inc. Later the name of the plaintiff was legally changed to Oxford Mercantile Corporation. The designations "Lelong" and "Oxford" in this memorandum refer to the plaintiff and counter-defendant.

form using the word "Solid" in its advertising and packaging both as the brand name and to describe the cologne.

On July 5, 1947, the Lanham Trade-Mark Act, Act of July 5, 1946, c. 540, 60 Stat. 427, 15 U.S.C.A. § 1051 et seq., became effective. The Lanham Act changed the law with respect to the registration of a descriptive word as a trade-mark to the extent of permitting its registration when it "has become distinctive of the applicant's goods". Section 2(f) of the Act authorizes the Commissioner of Patents to accept as prima facie evidence that a word has become distinctive as applied to the applicant's goods, proof of substantially exclusive and continuous use for the five years next preceding the date of the application for its registration.

On August 1, 1947, Lelong filed an application to register the word "Solid" as a trade-mark for its cologne, alleging its use by Lelong since 1941 and claiming the exclusive right to such trade-mark. Registration issued May 11, 1948.

Early in 1949 the affiliated Dana companies, Dana Perfumes, Inc., Dana Manufacturing Co., and Consolidated Cosmetics, began to manufacture and sell a non-liquid cologne under various trade-marks including. "Tabu," "20 Carats," "Platine," "Emir" and "Extra Dry." Dana used the words "solid cologne" in the packaging and advertising to designate the product and its form.

On May 7, 1949, a petition to cancel registration by Lelong of the trade-mark "Solid" as applied to cologne was filed with the United States Patent Office by one of the affiliated Dana companies.

On June 28, 1949, Lelong notified the Dana companies that Lelong claimed the exclusive right to use the word "Solid" as applied to cologne and charged the Dana companies with having infringed Lelong's trade-mark by their use of the word "Solid."

On October 10, 1949, Lelong filed the instant suit charging the Dana companies with infringement of Lelong's registered trade-mark "Solid" for cologne.

Lelong sought to enjoin the use of the word "Solid" in the manufacture, sale or distribution of cologne or other similar articles and to recover all profits made by the Dana companies from sales of cologne or related products in connection with which the word "Solid" was used. The complaint named five defendants: Dana Perfumes, Inc.; Dana Manufacturing Co.; Consolidated Cosmetics, a partnership composed of James L. Younghusband and Howard Younghusband, both officers of the two Dana corporations; James L. Younghusband, individually, and Howard Younghusband, individually.

Under date of October 13, 1949, Lelong sent 5,000 letters to department stores, drug stores, and wholesale and retail outlets handling perfume. These letters were identical except as to the names and addresses of the addressees. The body of each letter read:

"We are today writing our customers to inform them that we own United States Trade Mark registration No. 500262 for the trade mark 'Solid' as applied to stick cologne.

"Our rights to this mark have been challenged by Dana Perfumes and we have, in turn, filed suit against them in the United States District Court at Chicago for the infringement of this registered trade mark.

"Furthermore, we expect to do everything necessary to protect our exclusive rights to the trade mark 'Solid' in connection with the marketing at wholesale and at retail of stick cologne."

Announcements, identical except that they began "To the Trade: We desire to inform the trade that we own," were published, at Lelong's expense, in three leading trade journals: Women's Wear Daily on October 14, 1949; Drug Trade News on October 31, 1949; and Cosmetics and Toiletries, issue for November, 1949.

On November 25, 1949, Dana filed its answer and counterclaim in the instant

suit seeking a declaratory judgment that it had the right to use the word "Solid" to describe cologne, injunctive relief against interference therewith by threats of suits against its customers, and damages for such interference.

On February 14, 1950, Lelong filed suit against one of Dana's ·customers, Famous Department Stores, Inc., in the United States District Court for the Southern District of California, seeking injunctive relief and damages based on the alleged infringement of Lelong's trade-mark "Solid" through sales of Dana products bearing the word "solid."

On March 3, 1950, upon stipulation of the parties, a temporary injunction was issued in the instant suit barring further threats or suits against Dana's customers pendente lite.

On May 25, 1950, Lelong filed suit in the United States District Court in New York against Stineway Chemists, Inc., charging that the latter's sale of D'Orsay's non-liquid cologne bearing the trade-mark "Solidette" infringed Lelong's trade-mark "Solid."

Dana was successful in the Patent Office proceedings. Early in 1951 the Examiner of Interference recommended cancellation. Lelong appealed to the Commissioner who affirmed. On November 2, 1953, the Commissioner of Patents cancelled Lelong's registration of the trade-mark "Solid." In his decision the Commissioner of Patents completely ignored Lelong's claim that "Solid" had acquired a secondary meaning. He held that the word "Solid" is primarily a descriptive term and hence could not be registered. No mention was made of the Lanham Act which changed the law respecting the registration of such terms. A suit brought by Lelong in the United States District Court for the District of Columbia to review the cancellation order was dismissed voluntarily after Lelong sold its entire toiletries business except the trade-mark "Solid" to Coty, Incorporated, and abandoned the trade-mark "Solid."

Lelong dismissed all three suits filed for infringement, the instant one, the one in California against Famous Department Stores, Inc., and the one in New York against Stineway Chemists, Inc. The order dismissing the complaint in the instant case expressly reserved for future decision by the court all issues as to costs as well as the counterclaim filed by Dana.

With respect to the counterclaim the parties present three issues for decision: (1) whether this court has jurisdiction of the counterclaim; (2) whether Lelong's acts in threatening to sue Dana's customers for handling its cologne bearing the word "Solid" constituted unfair competition; and (3) whether Dana's request for a declaratory judgment that it has the right to use the word "Solid" to describe cologne is now moot.

■ The jurisdiction of this court over the counterclaim was not lost by dismissal of the complaint upon motion of the plaintiff. The counterclaim was one which defendants were required to file or forego any right to assert their claims in an independent suit. It was filed under Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides:

> "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *."

When the defendants' answer was due they had a claim against the plaintiff both for damages for unfair competition and for injunctive relief to protect defendants' right to use the word "Solid" to describe cologne without interference from plaintiff. Both of these claims arose out of the subject matter of the complaint, namely the plaintiff's registration of "Solid" as a trade-mark and defendants' alleged infringement thereof.

The original complaint here was within federal jurisdiction as a suit for infringement of a trade-mark registered under federal laws. Any compulsory counterclaim filed in a suit over which the federal courts have jurisdiction is within federal jurisdiction even though the counterclaim alleges no independent grounds of federal jurisdiction. The dismissal of the original complaint on non-jurisdictional grounds does not require dismissal of a compulsory counterclaim. Moore v. N. Y. Cotton Exchange, 1926, 270 U.S. 593, 609, 46 S.Ct. 367, 70 L.Ed. 750.

But though this court holds that it has jurisdiction over the counterclaim, it holds that the counterclaim should be dismissed on the merits. Throughout its pleadings, proof and briefing Dana has proceeded upon the assumption that it is an act of unfair competition for one claiming a trade-mark to warn a competitor's customer of suits for infringement. However, the law is well settled that such warnings are valid. As the court pointed out in Kelley v. Ypsilanti Dress-Stay Mfg. Co., C.C.E.D.Mich. 1890, 44 F. 19, 23, 10 L.R.A. 686:

"*  *  *, there would seem to be no good reason why a patentee may not notify persons using his device of his claim, and call attention to the fact that, by selling or using it, they are making themselves liable to a prosecution. *  *  * it would seem to be an act of prudence, if not of kindness, upon the part of a patentee, to notify the public of his invention, and to warn persons dealing in the article of the consequence of purchasing from others, *  *  *."

While the above quoted language referred to patents, the same rule is applicable to trade-marks. The ownership of a valid trade-mark renders any one dealing in goods bearing the infringing mark liable even though he purchased the infringing goods innocently. See Callmann, Unfair Competition and Trade-Marks, 2d ed., 1950, vol. 4, sec. 87.2(b) (1), p. 1772. Such a dealer may be required to respond by accounting for the profits derived from sales of the infringing goods and is not merely liable for damages. Hence the notice of infringement is an act of kindness to the dealer handling infringing goods.

It is also an act of self-protection on the part of the owner of the trade-mark. Notice to the alleged infringer lays a basis for treble damages under Section 35 of the Lanham Act. Furthermore, the right to issue such warnings often saves the owner of a trade-mark from having either to sue to enjoin all offenders or to stand by while sales which should properly be his are made by a competitor and its dealers.

The very substantial body of decisions in this field is collected and their holdings summarized in Callmann, Unfair Competition and Trade-Marks, 2d ed., 1950, vol. 2, sec. 42.4, pp. 719–720. The essence of the rules governing the issuance of infringement notices is there stated as follows:

"Warnings are a type of self-defense; accordingly, they are governed by the rule of necessity. They are also expressions of opinion; and hence, must be made sincerely and in good faith. Finally, they offer necessary information about ordinarily complicated problems; and therefore, they must be made with extreme accuracy and caution, without personal invective, and if possible, in such a manner that the opinion may be substantiated and the assertions capable of verification."

Dana insists that, whatever may be the law elsewhere, in this circuit such infringement notices constitute unfair competition even though the notices are issued in good faith and are truthful. The cases which Dana cites for this proposition do not sustain it. Our Court of Appeals has held that any one claiming such unfair competition has the burden of proving either bad faith or falsity. In Heuser v. Federal Trade Commission, 7 Cir., 1925, 4 F.2d 632, 634, the court set aside an order of the Federal Trade Commission because the evidence failed to show that the letters

threatening suits for infringement of a patent were sent in bad faith. The court said:

"* * * In weighing evidence upon this question the presumption is in favor of good faith. The party charging bad faith must prove it by evidence sufficient to overcome the presumption of good faith."

In each of the cases cited and relied upon by Dana the court expressly found either falsity or bad faith. In Panay Horizontal Show Jar Co. v. Aridor Co., 7 Cir., 1923, 292 F. 858, 859, the court said:

"There was pictured beneath this notice what was described as 'the only and original Panay horizontal show jar.' It was not an embodiment of the patent, and the notice as well as the *drawing* could have served no other purpose than to intimidate competitors and frighten jobbers and users by the publication of assertions which were *false* in part and misleading as to the remainder." (Emphasis supplied.)

That the case of Emack v. Kane, C.C. N.D.Ill.1888, 34 F. 46, 49–51, heavily relied upon by Dana, actually rests on a finding of bad faith is apparent from the following portions of the opinion:

"* * * The proof shows that defendants brought three suits against Emack's customers, * * *; that * * * defendants voluntarily dismissed them,—the dismissals being entered under such circumstances as to fully show that the defendants knew that they could not sustain the suits upon their merits; that said suits were brought in a mere spirit of bravado or intimidation, and not with a *bona fide* intent to submit the question of infringement to a judicial decision.

* * * * * *

"* * * The court will * * * consider, in the light of the proof as to the state of the art, and the proof as to defendant's conduct, whether the defendant made these threats against complainant's customers because he in *good faith* believed that complainant's slates infringed his patent, and intended to prosecute for such infringement, or whether such threats were made solely to intimidate and frighten customers away from complainant, and with no intention of vindicating the validity of his patent by a suit or suits." (Emphasis supplied.)

Similarly, Maytag Co. v. Meadows Mfg. Co., 7 Cir., 1929, 35 F.2d 403, 408, recognizes the necessity of establishing bad faith or falsity. The court said:

"* * * Equity has jurisdiction of a suit to enjoin substantial and continuing financial injury to a manufacturing business caused by circulating *false* statements that the product is an infringement of patents and threatening suit for infringement in *bad faith* for the purpose of injuring his trade and without intention to sue." (Emphasis supplied.)

Since Dana nowhere in its pleadings, proof, or briefs has charged that Lelong acted in bad faith or falsely in sending out the infringement warning this court is not called upon to assess Lelong's good faith. The record, however, contains nothing which indicates any bad faith.

Dana has insinuated that there was something wrong with Lelong's change of trade-mark attorneys when the first advised that "Solid" was non-registrable as a descriptive word and the substitution of others who proceeded to register the word. This insinuation ignores that between the time in 1941 when Lelong was advised that "Solid" could not be registered and its registration in 1948 two events occurred which changed the situation: the enactment of the Lanham Trade-Mark Act to permit the registration of descriptive words which had acquired a secondary meaning; and the seven year use by Lelong of the words "Solid Cologne" under circumstances which could arguably establish a sec-

ondary meaning. While an English firm, R. Demuty, Ltd., began to sell "the original solid cologne" in 1915, and in 1928 licensed Ferd. Muhlens Inc., to sell this product in the United States, Ferd. Muhlens Inc. was taken over by the Alien Property Custodian upon our entry into World War II. Some time between 1941 and 1943 Ferd. Muhlens ceased to sell "Solid Cologne" in this country. There is no evidence which establishes that any one other than Lelong sold any product labeled "Solid Cologne" in this country from 1943 to 1948. Dana did not enter the field until 1949.

Not only did Lelong register "Solid" as a trade-mark but the record shows that it systematically took steps to stop all infringement. In 1948 it discovered that Miriam Collins Cosmetics Company had placed a product called "Palm Beach Solid Cologne" on the market. Lelong at once notified Miriam Collins that she was infringing Lelong's trade-mark. Miriam Collins promptly discontinued using the word "solid," substituting the word "stick." Likewise the House of Barri began selling "Tease Solid Cologne." While samples of the offending packaging and advertising were introduced in the record the date on which Lelong discovered the infringement and notified them does not appear. There is no contradiction, however, of the testimony that the House of Barri immediately replied that it had been unaware of the infringement, promised to cease, and in fact did at once stop using the word "solid." Orchid Laboratories began to use "solid" for cologne and upon being informed of Lelong's claims to that word discontinued its use. This incident was fixed by witnesses testifying in 1940 as "several years, three or four years or more" earlier.

By the summer of 1950 numerous competitors were selling cologne in non-liquid form. They used such names as Blanchard's "Conflict Bouquet Stick," Lentheric's "Tweed Icicle," Prince Matchabelli's "Potpourri Concentrated Cologne Stick" Helen Ayar's "Stick Cologne Overture," Harriet Hubbard Ayer's "Sweet William Cologne Stick," Miner's "Apple Blossom Stick Cologne," Eisenberg's "Perfume Stick," Miriam Collins' "Palm Beach Stick Cologne," Lenel's "Frosted Cologne," and Macy's "Icy Cologne."

Lelong introduced evidence tending to establish that "Solid Cologne" had acquired a secondary meaning. For instance, one witness testified to an incident in which a salesgirl in a store, when asked by a customer for "solid cologne," replied, "That's Lelong's product. You will find it on the other side of the counter."

All of the foregoing attests to Lelong's complete good faith in seeking to protect its trade-mark against Dana's infringement. The methods Lelong followed in seeking such protection were likewise proper. Its notice to Dana of infringement followed by the filing of the instant suit was prompt and businesslike. On only one occasion were notices of infringement sent to Dana's customers, on October 13, 1940, three days after the instant suit was filed. Before sending the notice Lelong consulted its general counsel who in turn secured from trade-mark attorneys a written opinion respecting the propriety of sending such a notice. The language used in the notice sent was that recommended by counsel.

The fact that the same notice was sent to 5,000 customers and printed in three trade journals does not establish bad faith. The owner of a trade-mark has the right to stop all infringement. Its warning of suits for infringement may therefore properly be as widespread as the infringement. Callmann, Unfair Competition and Trade-Marks, 2d ed., 1950, vol. 2, sec. 42.4(a), p. 726. It is immaterial whether the notice is given directly to the alleged infringer, its customers or a trade journal. Aralac, Inc., v. Hat Corporation of America, 3 Cir., 1948, 166 F.2d 286, 292–293; Tel-O-Wave, Inc., v. Andre, Inc., D.C.Utah, 1947, 79 F.Supp. 799, 801.

The assertion that Lelong owned a registered trade-mark for "Solid" as

applied to cologne was true. The fact that the registration was later cancelled did not render Lelong's notice false. The right of the holder of a trade-mark, patent or copyright to warn others of infringement suits does not depend upon the validity of the trade-mark, patent or copyright so long as the holder believes his claims are valid. As the United States Court of Appeals for the Fifth Circuit stated in McIlhenny Co. v. Gaidry, 5 Cir., 1918, 253 F. 613, 622:

> "* * * Where one, believing himself to have an exclusive right to use a word as a designation of his goods, in good faith warns dealers against invasion of his supposed right, a mistake on his part as to the validity of his claim does not render him liable to an action by another, the sale of whose products was interfered with by the giving of such notice and warning."

Cf. Man-Sew Pinking Attachment Corp. v. Chandler Machine Co., D.C.Mass. 1940, 33 F.Supp. 950, 956; United States Galvanizing & Plating Equipment Corp. v. Hanson-Van Winkle-Munning Co., 4 Cir., 1939, 104 F.2d 856, 862.

■ Moreover, cancellation of the registration of Lelong's trade-mark was not a ruling as to whether Dana's use of "solid cologne" infringed upon Lelong's use. As our Court of Appeals has pointed out, "the right to use presents an issue separate and distinct from the right to register." John Morrell & Co. v. Doyle, 7 Cir., 1938, 97 F.2d 232, 235, 237, certiorari denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 415. Cf. Syncromatic Corp. v. Eureka Williams Corp., 7 Cir., 1949, 174 F.2d 649, 650, certiorari denied, 338 U.S. 829, 70 S.Ct. 79, 94 L. Ed. 504; McIlhenny Co. v. Gaidry, 5 Cir., 1918, 253 F. 613, 616–617. The foregoing observation remains valid under the Lanham Trade-Mark Act. This Act makes the right to register more nearly coincident with the right to use than had previously been true but does not make them completely coincident. For instance, descriptive and geographical terms may not be registered unless and until they have acquired a secondary meaning, but their use will be protected by the courts from deceptive or confusing competition without registration and without a secondary meaning.

The dismissal of the three infringement suits by Lelong voluntarily does not show bad faith. Lelong did not dismiss them until after it sold its complete toiletries business, except for the trade-mark "Solid," to Coty, Inc. Prior thereto Lelong had given every indication of litigating the suits vigorously. Lelong presented a very substantial case, supported by hundreds of exhibits, before the United States Patent Office. The extent and character of the record Lelong there made leave no room for even accusing it of sham or insincerity in its assertion of its legal claims. It is also understandable that Coty, Inc., in purchasing Lelong's business did not wish to purchase three or four lawsuits. Thus the dismissal of the suit to review the order of cancellation of the registration and the dismissal of the three infringement suits followed as a matter of course when Lelong sold its business and abandoned the use of the word "Solid" as a trade-mark.

■ In sum, Dana has failed to show any impropriety in Lelong's efforts to protect its use of the word "Solid" as applied to cologne.

■ The prayer in the counterclaim for a declaratory judgment that Dana has the right to use the words "solid cologne" appears to be moot at this time. Lelong has abandoned "Solid" as a trade-mark, and has sold its business. In the trial before this court and in its brief Lelong disclaimed any interest in the words "solid cologne." There is no longer any controversy between the parties over the use of the words. All are agreed that Dana may use them. The issue is accordingly moot. No declaratory judgment can properly be entered with respect to a moot issue. National Hairdressers' & Cosmetologists' Ass'n, Inc., v. Philad Co., D.C.Del., 1944, 4 F.R.D. 106, 107; Papaliolios v. Durning, 2 Cir., 1949, 175 F.2d 73, 75.

At the trial of this case each party put on one brief witness and counsel for the parties stipulated that the depositions taken in this case by either party, and the record before the United States Patent Office in the cancellation proceeding, including the exhibits, may be considered as read, offered and a part of the proceedings in this case, subject to all objections which have been made and which may be made, and that such depositions, Patent Office record and exhibits might be filed and marked on or before the final brief herein was due. This stipulation deferred ruling on all objections raised. The material thus stipulated into the record is bulky and voluminous. Most of it deals with the validity of Lelong's claim to trade-mark rights in the word "Solid" as applied to cologne and with the damages Dana allegedly suffered as a result of Lelong's sending of infringement notices to its customers. Lelong objects to the former type of testimony on the ground it relates solely to the issues which are moot and to the latter on the ground that Dana's failure to establish bad faith in the sending of the notices renders the damage issue irrelevant. The court has found the testimony and exhibits as to the validity of Lelong's claim to trade-mark rights relevant to the issue of good faith. Accordingly the objection to this evidence will be overruled. While the court has held with Lelong on the issue of bad faith, nevertheless Dana was entitled to show the impact of the notice on its customers. Dana itself admits that its evidence as to damages did no more than show the need for an accounting before a master if it were held that the infringement notices constituted unfair competition. Lelong's objections thereto will be overruled. The court will admit all depositions, Patent Office record and exhibits into evidence.

No costs will be taxed against any party. All parties have litigated in equal good faith. The errors of law on both sides appear to be equal. The plaintiff was wrong in its belief that its trade-mark registration was valid. The defendant was wrong in believing the plaintiff had no right to send infringement notices to defendant's customers. In view of all the circumstances of this litigation and the nature of the issues involved, it seems fairest to leave the parties to bear such costs as they have incurred.

The counterclaim will be dismissed upon the merits. No costs will be assessed either as to the original suit or as to the counterclaim.

The foregoing memorandum of decision contains the findings of fact and conclusions of law required under Rule 52(a) of the Federal Rules of Civil Procedure.

Judgment will be entered for the plaintiff and counter-defendant on the counterclaim of the defendant and counter-plaintiff with no costs.