**Thomas A. HEINZ, an Individual and Citizen of Illinois, Heinz & Co., a Michigan Corporation, and C & W Woodcrafters, Inc., a Corporation, Plaintiffs,**

v.

**The FRANK LLOYD WRIGHT FOUNDATION, Defendant.**

**The FRANK LLOYD WRIGHT FOUNDATION, Plaintiff,**

v.

**Thomas A. HEINZ, and Heinz & Co.**

**Nos. 91 C 931, 91 C 942.**

United States District Court, N.D. Illinois, E.D.

April 26, 1991.

---

John W. Hofeldt, Gomer Winston Walters, Stephen J. Manich, Wood, Phillips, Mason, Recktenwald & Van Santen, Chicago, Ill., for Thomas A. Heinz, Heinz & Co. and C & W Woodcrafters, Inc.

William Henry Barrett, Alan B. Samlan, Fox and Grove, Chartered, Chicago, Ill., Dale A. Danneman, Glenn Spencer Bacal, James T. Acuff, Jr., Lewis & Roca, Phoenix, Ariz., for Frank Lloyd Wright Foundation.

## ORDER

NORGLE, District Judge.

Before the court is the motion of the plaintiffs in case number 91 C 931, Thomas A. Heinz, Heinz & Company and C & W Woodcrafters, Inc. (the "Heinz plaintiffs"), for a preliminary injunction. For the following reasons, the motion is denied.

Initially, the court will set out a brief synopsis underlying the more than six year history of the dispute between plaintiff Thomas A. Heinz and the Frank Lloyd Wright Foundation ("the Foundation"). Judging from the vitriolic nature of the briefs submitted by both the Heinz plaintiffs and the Foundation, the dispute has been anything but cordial.

Thomas A. Heinz is an architect who has devoted a great deal of his time to the study of the works of Frank Lloyd Wright. Mr. Heinz eventually designed a line of reproductions of Frank Lloyd Wright furniture and home furnishings. On June 27, 1977, Mr. Heinz first wrote to Mrs. Frank Lloyd Wright, detailing his work in designing Frank Lloyd Wright reproductions. Nearly two years later, Mr. Heinz received a letter from the Frank Lloyd Wright Memorial Foundation (a different entity), asking that he identify any furniture produced as not made from original plans or drawings.

In April of 1984, the Foundation wrote Mr. Heinz and threatened litigation concerning Mr. Heinz's production of Frank Lloyd Wright furnishings. On May 30, 1985, Mr. Heinz filed a declaratory judgment action in the United States District Court for the Western District of Wisconsin, in which the Foundation counterclaimed. Nearly one year later, the parties

entered into a settlement agreement and the case was dismissed.

However, the settlement of this dispute was short lived. On December 20, 1989, the Foundation filed suit against the current defendants in the United States District Court for the District of Arizona, alleging, among other things, breach of the settlement agreement and trademark infringement. On October 4, 1990, the Arizona court, upon motion, transferred the case to the United States District Court for the Western District of Wisconsin, where the Heinz plaintiffs had likewise filed suit. These two cases were eventually consolidated and then again transferred, on February 6, 1991, to the United States District Court for the Northern District of Illinois.

By this rather round-about route, the Heinz plaintiffs have brought before the court a motion for a preliminary injunction. Plaintiffs claim that the Foundation has threatened purchasers and prospective purchasers of Mr. Heinz's Frank Lloyd Wright collection furnishings with suit for trademark infringement. Plaintiffs allege that the Foundation is engaging in a pattern of threats and litigation against customers willing to purchase and distribute pieces of Mr. Heinz's reproductions, in order to drive Mr. Heinz out of business. Plaintiffs seek a preliminary injunction enjoining the Foundation from threatening, intimidating or harassing the customers of Heinz & Co., through the mailing of infringement letters. The Heinz plaintiffs also seek to enjoin the Foundation from instituting suit against the plaintiffs or their customers for claims relating in any way to the Frank Lloyd Wright reproductions without prior leave of court.

## DISCUSSION

▮ A preliminary injunction is an extraordinary remedy and should only be granted in a case where the movant has clearly carried his burden of persuasion as to all the prerequisites. *Lasco v. Northern*, 733 F.2d 477, 480 (7th Cir.1984); *Haussmann v. Chicago Board of Edu-*

*cation*, 737 F.Supp. 56, 57 (N.D.Ill.1990). To obtain a preliminary injunction, a plaintiff has the burden of showing four things: 1) they have no adequate remedy at law or will be irreparably harmed if the injunction does not issue; 2) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; 3) the plaintiffs have a reasonable likelihood of success on the merits; and 4) the granting of a preliminary injunction will not disserve the public interest.[1] *Roland v. Airline Employees Association International*, 753 F.2d 1385, 1392 (7th Cir. 1985) (*citing Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir.1984)). It is the burden of the party seeking a preliminary injunction to establish, with reasonable certainty, that he will succeed at the final hearing. *Adams v. Attorney Registration & Disciplinary Com'm*, 801 F.2d 968, 971 (7th Cir.1986). A trial court's decision as to the granting or denial of a preliminary injunction is subject to review for an abuse of discretion. *Roland*, 753 F.2d at 1392.

▮ As to the first factor, plaintiffs carry their burden of showing that no adequate remedy at law exists. If the defendant is not enjoined from sending infringement letters to current and prospective customers of Heinz & Co., it is likely that plaintiff may go out of business. Any compensation the plaintiffs may receive at the termination of the case would come too late to save the plaintiffs' business. *See Roland Machinery*, 749 F.2d at 386.

As to the second factor, the balance of harms weighs in favor of neither the plaintiffs nor the defendant. As noted above, the Heinz plaintiffs may suffer serious business losses and could go out of business if the defendant is not enjoined from the sending of infringement letters and litigating against plaintiffs' customers. On the other hand, a preliminary injunction would prevent the Foundation from protecting its registered trademark. Registration of a mark on the principal register is prima facie evidence of the exclusive right

---

**1.** *Roland Machinery* goes farther, stating that the court can consider preservation of the status quo when deciding a motion for preliminary injunction. *Roland Machinery*, 749 F.2d at 383.

to use the mark in commerce. 15 U.S.C. § 1115(a). The statute specifically provides for civil liability for the infringement of a trademark owner's rights. 15 U.S.C. §§ 1114, 1125. Enjoining the Foundation from sending infringement letters and instituting litigation without leave of court would wholly prevent the Foundation from protecting its trademark rights until the termination of this litigation. Therefore, when the balance of harm caused to plaintiffs' business interests is weighed against the defendant's right to bring a civil action to protect its trademarks, the balance of the harms between the parties is equal.

The public interest factor in this case does not weigh in favor of either plaintiffs or defendant. While the granting of the injunction would allow the public access to plaintiffs' reproductions of Frank Lloyd Wright furniture, it may also create confusion in the public mind as to the source of the furniture and could possibly dilute defendant's use of its registered trademarks.

Turning to the issue of the likelihood of success on the merits, the court notes that plaintiffs' complaint is in six counts. Count I alleges a violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Count II alleges a violation of section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. Count 3 alleges a violation of section 3 of the Clayton Antitrust Act, 15 U.S.C. § 14. Count IV alleges a claim for common law unfair competition. Count V raises a claim for breach of contract. Count VI raises a claim for interference with contractual relations and business opportunity.

■ In their memorandum in support of the motion for preliminary injunction, plaintiffs only address the likelihood of success on the merits of counts IV and VI, those alleging unfair competition and interference with contractual relations and business opportunity. Plaintiffs apparently do not argue that there is a likelihood of success on the merits of their antitrust claims[2] (counts I–III) or their breach of

contract claim (count V). A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point. *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990). The court is not required to do a litigant's research for him. *Giovannetti*, 919 F.2d at 1230. Therefore, the court will address the likelihood of success on the merits factor only as it deals with the claims for unfair competition and interference with contractual relations.

Plaintiff alleges that certain infringement letters sent by the Foundation to current and prospective customers of Heinz & Company present a *prima facie* case of unfair competition and interference with contractual relations. Memorandum in Support, p. 14. However, it has long been the law in this circuit that "[a] trademark holder has the right to defend himself against infringement and to warn purchasers from the alleged infringer that they, too, might be liable to him" through the sending of infringement letters. *Spangler Candy Co. v. Crystal Pure Candy Co.*, 235 F.Supp. 18, 32 (N.D.Ill.1964); *see also Ramm Industries v. Chapman Performance Products, Inc.*, 184 U.S.P.Q. 474, 475 (N.D.Ill.1974) (*citing Spangler*); *Lucien LeLong, Inc. v. Dana Perfumes*, 138 F.Supp. 575, 579 (N.D.Ill.1955); *Chromium Industries, Inc. v. Mirror Polishing & Plating Co. Inc.*, 448 F.Supp. 544, 558 (N.D.Ill.1978) (dealing with infringement letters in patent case); *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 400 F.Supp. 170, 177 (N.D.Ill.1975) (dealing with infringement letters in patent case); *American Sign and Indicator Corp. v. Schulenburg*, 167 F.Supp. 20, 30 (E.D.Ill.1958) (dealing with infringement letters in patent case). However, the right to send infringement letters is limited. A trademark owner may not send infringement letters which

---

**2.** Even if plaintiffs had chosen to address this issue, the court notes that their burden to show an antitrust violation through the sending of infringement letters is high. A good faith effort to enforce trademark rights is not the type of

conduct precluded by the Sherman Act. *Alberto Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir.1972); *Clark Equipment Co. v. Lift Parts Mfg. Co.*, Copyright L.Rep. (CCH) ¶ 25,989, 1986 WL 4423.

contain false statements or which are issued in bad faith. *Spangler,* 235 F.Supp. at 32; *Lucien LeLong,* 138 F.Supp. at 579. In order to show that there is a likelihood of success on the unfair competition claims, plaintiff must show that the Foundation sent these letters out in bad faith or that the letters contained false statements.

In the present case, plaintiffs do argue that the Foundation's purpose in sending out these letters is to intimidate and harass customers of Heinz & Company. Memorandum, p. 13–15. However, these assertions are mere conclusions, and are not supported by any factual allegations sufficient to support a finding that the Foundation sent these infringement letters in bad faith.[3] Plaintiffs sole factual allegation concerning the infringement letters states that customers of Heinz & Company stopped doing business with them as a result of the receipt of the infringement letters. Plaintiffs' Memorandum, p. 13–15. This is not evidence of bad faith, but merely evidence that the Foundation was successful in taking measures to protect its trademarks.

Plaintiffs also argue that the Foundation has misrepresented the scope of its trademarks, both to this court and to Heinz & Company's customers. Plaintiffs' Reply, p. 4–7. However, these allegations are merely the Heinz plaintiffs' belief as to the scope of protection to be afforded to the Foundation's trademarks. Moreover, plaintiffs make no showing that the Foundation did not believe that the facts contained in the infringement letters were true. As noted by the *Spangler* court, "the right of the holder of a trademark to warn others of infringement suits does not depend upon the validity of the trademark so long as the holder believes his claims are valid." *Spangler,* 235 F.Supp. at 33 (*quoting Lucien LeLong,* 138 F.Supp. at 582). In the present case, there is no evidence to suggest that the Foundation's actions are anything more than good faith efforts to protect their trademarks. Plaintiffs have not established a likelihood of success on the merits of their unfair competition and interference with contractual relations claims.

In sum, the plaintiffs have not carried their burden to show that the balance of harms and the public interest weigh in their favor. Most importantly, the plaintiffs have not shown that there is a likelihood of success on their claims. Accordingly, plaintiffs have not met their burden to warrant the extraordinary relief of a preliminary injunction. The motion for a preliminary injunction is denied.

IT IS SO ORDERED.

---

**3.** Moreover, the court notes that plaintiff's bald assertions that the defendant's acts constituted harassment seem unfounded. Black's Law Dictionary defines harassment as "[W]ords, gestures and actions which tend to annoy, alarm or abuse (verbally) another person." Black's Law Dictionary, p. 717 (6th ed. 1990). Black's uses, as an example, a situation where one engages in a course of alarming conduct serving no legitimate purpose of the actor. In this case, the one letter sent to Manifesto and the two letters sent to Neidermaier (both customers of Heinz & Co.) serve the Foundation's legitimate purpose in protecting its trademarks. Moreover, nothing in the letters, attached to the plaintiff's proposed findings of fact, is so extreme as to make these letters "intimidating or harassing."